Plaintiff instituted this suit to recover for personal injuries he alleged he received when he fell from the top of a truck on which he had been invited to ride by defendant, M.H. Waller. Plaintiff was a member of a CCC Camp located near the Town of Ringgold, Louisiana. On the day of the accident he was standing on the side of the road just east of Bossier City.
M.H. Waller is the owner and operator of a farm near the Town of Ringgold and was proceeding from Shreveport, Louisiana, to his farm in a truck loaded with hay. When he was near to plaintiff, plaintiff gave the "hitch-hiker's" sign indicating that he wanted to ride. Mr. Waller knew the man and stopped his truck and allowed plaintiff to get on. At the time the seat in the cab of the truck was occupied by Waller, a negro farm hand and another member of the same CCC Camp whom Waller had picked up a short time before he stopped to pick up plaintiff. Since the seat in the truck was filled by the three occupants, Waller told plaintiff he might ride on the tool box, specially built on top of the cab of the truck. The box was 7 1/2 feet long, 18 inches wide and 15 inches deep. It was built on the back part of the top of the cab and was large enough for one to sit on and rest his feet on the cab top. The body of the truck, which was behind the tool box, was of the same height as the top of the tool box. On this occasion the hay was higher than the top of the body of the truck and made a very good backrest for one sitting on the tool box. The hay was tied on with ropes which provided means of holding on if it became necessary to do so.
When Waller told plaintiff he could ride on the tool box, he also told him that Mrs. Waller and his baby were traveling ahead of him in a passenger car; that she usually stopped somewhere on the road for a coca-cola and he would no doubt overtake her when she did and plaintiff could then ride with Mrs. Waller and the baby if he desired. Plaintiff got onto the tool box and was asked by his friend, the other guest, if he was ready and replied in the affirmative. Mr. Waller then asked him if he was ready, to which he answered that he was and that he could ride all the way on the tool box, indicating that he found the seat comfortable and thought it safe. Waller then started the truck and continued down the paved road at a speed of from 23 to 25 miles per hour. After traveling approximately 1 1/2 miles the guest on the seat of the truck heard a scratching noise which attracted his attention. On looking around he saw plaintiff hanging by his hands onto the side of the truck. He called Mr. Waller's attention who immediately drove off the pavement to clear from the heavy traffic and stopped his car but before he succeeded in stopping, plaintiff had either fallen or jumped off the truck and struck his head on the pavement causing two fractures of his skull.
The only other person who testified to seeing plaintiff after he got on top of the truck was a disinterested passerby on the road who said when he passed the truck a short time before the accident, his attention was attracted by the position plaintiff was occupying on the truck. He was at that time on the side of the truck holding on by his hands, apparently to the top of the body of the truck and with his feet resting on some other part of the truck. He was not at that time in a falling posture and his feet were not dangling. We *Page 306 
mention this fact for the reason there is no evidence that plaintiff fell from the truck and defendant contends that he tried to alight from the moving truck. Some weight is given to this contention by the fact that the accident occurred directly in front of plaintiff's sister's home.
When the case was called for trial below plaintiff's counsel informed the court that he had just discovered that plaintiff had developed a lapse of memory and had no recollection of what happened after he boarded the truck; that he remembered everything up to that moment. More than one continuance was granted on such a plea and finally counsel for plaintiff closed his case without ever placing him on the stand. Plaintiff was physically well and was regularly performing his daily work at the time of trial below. We think it would have been advisable for plaintiff to place him on the stand. He could have given information relative to why he rode on the tool box. His memory as to everything up to the time he mounted the tool box is claimed to be perfect.
Under the testimony in this case we can as well hold plaintiff attempted to alight from the moving truck without notice to Waller as we can hold that he fell from the truck. He gave no outcry and was on the side of the truck at least for a sufficient time to have made an outcry and for it to have been heeded in time to save him if he was in the act of falling.
We are frank to admit we are not impressed with the lapse of memory theory and there is no testimony in the record to sustain such a finding.
In his petition plaintiff alleged that the defendants were guilty of negligence in the following respects:
Stopping and insisting on plaintiff riding on the truck when there was no safe place for him to ride; insisting that plaintiff ride on top of the cab when he would have been safer on top of the load of hay; M.H. Waller telling the boy it would be safer to ride on the tool box on top of the cab when with his superior knowledge he knew that it was not; racing the truck with a boy on top of the cab exposed to the wind and with nothing to hold onto in an effort to catch Mrs. Waller who was in a faster car ahead, who did not know he was trying to overtake her; exceeding the legal speed limit fixed by law and ordinance on that particular stretch of road; riding a passenger in a position in violation of the State Motor Regulatory Act, Act No. 286 of 1938, § 1 et seq.; failing to stop soon enough while the boy was hanging on the side; starting with such a sudden start as to throw the boy off balance; not warning the passenger of his dangerous position; and in not keeping a proper lookout to see that he was safe at all times.
In this court plaintiff has only urged one of the many alleged acts of negligence. We presume he has abandoned the others and it is well that he has for there is no evidence to sustain any of them. He contends here that it was negligence for defendant's truck driver to invite an ignorant "country lad" to ride on top of the cab of the truck. Plaintiff was a normal man, 21 years of age, with a third grade education. He was raised on a farm and had been in a CCC Camp for many months regularly performing the duties assigned to him. There is nothing in the record to indicate that plaintiff was incapable of recognizing any ordinary danger that might confront him. It requires no special skill or knowledge for one to know that it is not as safe to ride on the top of a car or on the bumper or fender as it is to ride in the regular seat provided for passengers.
Defendant specially pleaded that the plaintiff assumed the risk incident to the operation of the car. We are of the opinion the plea is well-founded and there is no negligence proved as to the manner the car was operated by defendant Waller that in any manner made the danger or risk any greater than that which was assumed by plaintiff, that is, the risk of ordinary travel. Wirth v. Pokert, 19 La.App. 690, 140 So. 234; Elliott v. Coreil, La.App., 158 So. 698; McDonald v. Stellwagon, La.App., 140 So. 133.
We are therefore convinced that the judgment of the lower court rejecting the demands of the plaintiff is correct and it is affirmed. *Page 307