This suit results from a serious accident which took place during the early morning hours of November 24, 1945, in Assumption Parish, on Highway No. 90 at a point about 10 miles east of the Bayou Black bridge.
The plaintiff, Edward Lang Albright, was driving his 1941 Plymouth two-door Sedan, going west in the direction of Morgan City, when he ran into the rear end of a large truck and trailer, belonging to the defendant, James Samuel Tatum, which was heavily loaded with oil well mud.
As a result of the impact, Edward Lang Albright sustained personal injuries and the loss of his automobile which took fire and burned beyond repair, and his brother, Gerald D. Albright, his guest passenger, suffered the loss of his life, either in the accident itself or in the conflagration which took place afterwards.
This suit is brought jointly by Mrs. Frances Turner Albright, widow of Gerald D. Albright, in her own name and for and on behalf of her three minor children, Beverly Ann, Jerry Ann, and Mary Frances, issue of their marriage; Edward Lang Albright; the Employers Liability Assurance Corporation, Ltd., of London, England, and the Employers Fire Insurance Company. These plaintiffs all charge the driver of the truck, who was in the employ of the owner, James Samuel Tatum, with the negligence which caused the accident. They implead as defendants, James Samuel Tatum, doing business as Jim Tatum Trucking Service, and Highway Insurance Underwriters of Austin, Texas, which carried the public liability insurance on the truck.
Negligence is charged against the driver, Chester A. Russell, in the following particulars: (1) In stopping the truck which was connected to the trailer with a coupling pole, on the highway, without leaving a 15 foot clearance on the paved portion of the highway; (2) in failing to set out flares as required by the law of Louisiana and particularly Act No. 164 of 1936, as amended by Act No. 215 of 1942; (3) in failing to have either side or rear lights lighted on the truck and trailer at the time of the accident; (4) in parking the truck and trailer in such manner that he knew or should have known that it would be difficult for traffic approaching from the rear to discern the object on the highway because of its color and composition, and (5) in failing to take any precaution whatever to warn traffic approaching from the rear of the danger that existed on the highway by reason of the said truck being parked there in the condition it was.
Mrs. Frances Turner Albright sues for $20,000 for herself, because of her loss caused by the death of her husband, and for $10,000 for each of her minor children. Edward Lang Albright sustained personal injuries, the principal one being a fracture of his right arm, and by reason thereof, incurred medical expenses and suffered loss of time from his work, for all of which he *Page 890 
asks the sum of $5,000. The Employers Insurance Corporation, Ltd., was the compensation insurance carrier of Edward Lang Albright's employer, Halpin Construction Company, Inc., and under its policy of insurance, had paid him up to the time of the filing of this suit, compensation at the rate of $20 per week, or a total sum of $171.43, and in addition they also paid all of his medical and hospital expenses in the full amount of $353.40, for all of which it prays for judgment. It had also become obligated to pay compensation to Mrs. Frances Turner Albright, individually and on behalf of her minor children, plus the sum of $300 for funeral expenses which it also seeks to recover, both of its demands being asked to have precedence over the claims of the respective parties for whom it had become obligated to pay these amounts. The Employers Fire Insurance Company carried insurance on the automobile which was destroyed in the accident and had had the owner, Edward Lang Albright, assign his claim in the sum of $875, that being the amount of the loss, less $50 deductible under the policy, and it prays for a judgment against the defendants in that amount. The $50 deductible is included in the demand of Edward L. Albright making his total claim the sum of $5,050. Judgment is prayed for by all plaintiffs against the defendants, in solido.
Both defendants filed a joint answer in which virtually all the allegations relating to the manner in which the accident happened are denied and further answering they set out that when the truck reached the point on the highway indicated in plaintiff's petition, the driver slowed down his speed, after dimming his lights, to approximately 10 to 15 miles per hour in order to meet a Greyhound bus which was approaching from the west. They aver that just after the bus met the truck, the driver felt a sudden jolt from the rear end of the trailer which caused him to stop immediately and that on getting out he found that the automobile had run into the left rear end of the trailer and the load of oil well mud, the right front end of the car having come in contact with the left rear end of the trailer. It is further averred that he was driving his truck on his right hand side of the paved slab of the highway, in a prudent and careful manner; that it was fully equipped with head-lights, tail lights, clearance lights, and that there was a tail light on the trailer, all of which were in good condition and properly operating at the time of the accident. It is further averred that when the automobile ran into the trailer it did so with such force that the sacks of mud on the trailer were knocked off and the shackles holding the spring on the rear of the trailer on the left side were bent and broken and the spring was knocked over against the dual wheels. All of this, it is urged, indicates the speed at which the Plymouth automobile was going at the moment and points to the negligence of the driver as being the sole and only cause of the accident. In the alternative the defendants plead that if it be shown that there was any negligence on the part of the driver of the truck, the driver of the Plymouth was guilty of contributory negligence in the manner already set out which negligence is imputed to the deceased, Gerald D. Albright, his guest passenger, who should have observed the negligent manner of his driving and that as a consequence of said contributory negligence all plaintiffs are barred from recovery.
Judgment in the lower court was in favor of the plaintiffs as follows: In favor of Mrs. Frances Turner Albright, individually, in the sum of $14,000 and on behalf of her three minor children in the sum of $8,000 for each. This judgment is rendered against both defendants, in solido, but is limited, as against the defendant Highway Insurance Underwriters, to the sum of $25,000, that being the extent of that defendant's liability under its policy of insurance. In favor of Edward Lang Albright in the sum of $2,403.40, against both defendants, in solido. In favor of Employers Liability Assurance Corporation, Ltd., for the amount of compensation paid by it to Mrs. Frances Turner Albright, individually and for and on behalf of her minor children to the date of the rendition of the judgment, plus the sum of $300 paid by it for funeral expenses of Gerald D. Albright. That judgment is against both defendants in solido and it also relieves the Employers Liability Assurance Corporation for compensation *Page 891 
to her and her three minor children, in so far as the excess of the judgment in her favor for herself and her children, is sufficient to satisfy further compensation due, computed at 6% per annum. In favor of the Employers Liability Assurance Corporation, Ltd., for the amount of compensation paid by it to Edward L. Albright in the sum of $171.43 plus the amount of $353.40 paid by it for medical and hospital expenses, this judgment being against both defendants in solido and to be paid by preference out of the judgment rendered in favor of Edward Lang Albright. In favor of Employers Fire Insurance Company in the sum of $875 against both defendants in solido. All judgments, except those which specifically decreed otherwise, were to bear interest at the legal rate until paid and the defendants were taxed with all costs. Both defendants have taken a devolutive appeal. An answer to the appeal was filed on behalf of Mrs. Frances Turner Albright, individually and for her minor children asking for an increase in the amount awarded from the sum of $14,000 to the sum of $20,000 for herself and from the sum of $8,000 to the sum of $12,000 for each of her children.
As must be noted from the statement of the pleadings and the principal issues in the suit, mostly questions of fact are presented. If there is any law involved it is so closely connected with the facts that they both can be discussed together.
As we view it, there are four propositions to be considered in the case: First, that which relates to the negligence of the driver of the Tatum truck; second, that which relates to the contributory negligence of the driver of the Albright car; third, that which relates to the imputation of his contributory negligence, if any, to Gerald D. Albright, the guest passenger in the car, and fourth, that which relates to the amount of the damages to be awarded in case of liability, if any.
We think it is important in considering the question of the negligence of the driver of the truck, to observe the composition of the equipment he was in charge of at the time of the accident. It is described rather minutely in the testimony in the case and there are photographs in the record which gives a good idea of its composition. It is important for us to consider this for two reasons: First, it seems that the clearance and tail lights are attached to this vehicle in such a way, that it becomes an important question when we come to decide whether the clearance and tail lights were burning at the time of the impact; secondly, the appearance of the rear end of the vehicle may be important when we consider whether the driver of the Plymouth automobile had difficulty in seeing its outline on the highway before running into it.
The equipment consisted of two separate units attached together by a coupling pole. This pole was a piece of 4 or 4 1/2 inch oil pipe. The front unit is the tractor part which pulled the rear end, called the trailer. Its overall length is not stated, but from the photographs we would judge that it was a rather long and bulky affair when the two units were assembled together. Its length, however, is not as important as its width, for in considering the amount of the surface of the highway it covered, that may have some bearing on the question of the negligence of the driver. There are no definite measurements given of its width but there is testimony that from the outside of one of the rear dual wheels to the outside of the other, it covered the entire lane of travel which it occupied with the exception of possibly six inches on each side. The trailer had a flat surface on which lay part of the 100 sacks of oil well mud. The other part was loaded on the tractor and it was all covered with a tarpaulin. These sacks of oil mud weighed one hundred pounds each.
This loaded equipment left Harvey, Louisiana, on the morning of the accident at about 2 or 2:30 o'clock. The driver is positive in his testimony that he examined the whole load before he left and is sure that all clearance and tail lights were burning at the time. A witness by the name of Thomas A. Mayers, superintendent in charge of defendant Tatum's business, testified that this truck and trailer were in perfect working condition at the time; that it had recently been painted a bright red color and all equipment had been properly tested. We might then assume that at the time the load left Harvey, the lights were burning properly. *Page 892 
It is shown, however, that on equipment of this kind there are permanent clearance and tail lights only on the tractor and the clearance and tail lights on the trailer end of the equipment are accessory. They consist of a string of lights attached to the trailer by means of large rubber bands. It is to this string that the tail light of the trailer was also attached. The current to this string of lights is supplied from the system furnishing the permanent lights on the tractor by means of a plug-in and socket arrangement.
The driver Russell says that he drove on as far as Thibodaux and stopped there to have a cup of coffee. He says that before entering his cab upon leaving Thibodaux he again examined his lights and found them all burning. He then proceeded on and drove as far as the place where the accident occurred. A seriously disputed question is whether or not his truck was stopped on the highway when it was run into or whether it was still in motion. The other seriously disputed point is whether or not the clearance and tail lights on the trailer were burning at the moment.
Russell testifies that he was driving about 35 miles per hour and that he slowed down at the time to a speed of about 10 miles per hour in order to light a cigarette. At this moment he observed a vehicle approaching him from the west, about one mile distant. That vehicle gave him its dimmers and he responded by giving his. In order to meet this approaching vehicle safely, he says that he put his cigarette down in order to put both hands on his steering wheel and as he did so he heard a crash into the rear end of the trailer of his truck whereupon he stopped it within a very few feet. Another reason he gives for slowing down his speed was because he was nearing his destination.
The testimony offered on behalf of the plaintiffs on this point is that of the plaintiff Edward Lang Albright, who says that he is positive that the truck was not in motion. The first thing he observed after he emerged from the light of the vehicle which Russell had observed coming from the west, was the dual wheels on the trailer and he is positive that they were not turning. The other testimony offered by them is that of the driver of the vehicle coming from the west which turned out to be a Greyhound bus. The driver was a man by the name of Richard, known as "Frenchy." His testimony is that about one mile distant, he observed the lights of the truck on the highway and saw that its head-lights were shining brightly. He blinked the lights of his bus and received no response, he blinked his several times again. Still receiving no answer, it occurred to him that there might have been an accident on the road so he slowed down. On nearing the truck he saw that there was no accident but in taking in the scene he says he looked into the cab of the truck and saw no one in it. Obviously then the truck was stopped.
We believe that the testimony of the plaintiffs prevails over that of the defendants on this important point in the case. It is unusual, we believe, for the driver of a truck to take the precaution this driver says he did by slowing down in order to light a cigarette, and then on seeing a vehicle approaching him, put the cigarette on the seat in order to make use of both of his hands on the steering wheel. The other reason he gives for having slowed his speed does not impress us as being a straight forward story because he must have known that at this place on the highway, he was nowhere near his destination which was New Iberia, Louisiana. Another circumstance to be considered is that the truck did not move very far if the impact was as strong as he says it was, for a vehicle that was in motion. It may be that Albright, in the excitement of the moment might not have been so positive as he says he was in observing that the truck was not moving, but there is no reason why the testimony of Richard, the bus driver, should not be given credence on this point. It would seem to be a reasonable thing for bus drivers, especially one with twenty-seven years experience such as he had, to have observed the things he said he observed. When he saw the bright lights of this truck on the highway and called for its dimmers and did not get them, the normal thing for him to do was to continue blinking his lights in order to have an answer from the other vehicle. That he got no answer impresses us *Page 893 
with the idea that there was no one in the truck to give an answer. It seems also to have been a reasonable thing, because of the situation that existed, for him to expect that there may be trouble on the highway and more naturally for him to have slowed down to observe it, as he says he did, and this could very well have included his looking into the cab of the truck to see if the driver was in it or not.
We conclude therefore that the preponderance of the testimony shows that the truck was at a complete stop and was parked entirely on its right hand lane of travel on the paved portion of the highway, and we will next discuss the other important point relating to negligence concerning the lights on the rear end and on the side of the trailer and whether they were burning or not.
Although Russell says that he examined the lights before leaving Thibodaux and is positive that they were burning, he admits that because of the manner in which they were connected by means of a socket to the permanent lights on the tractor, it is possible for them to become loosened when the truck and trailer turned a sharp curve on the highway. He testified that there were two or three such curves between Thibodaux and the place where the accident occurred. Mayers, defendant Tatum's foreman in charge of equipment, not only admitted the possibility of the trailer lights pulling loose from their connection with the permanent lights on the tractor but says he knows of instances where that happened.
Albright, the driver of the car, is positive that there were no lights burning on the trailer, at the time he ran into it. He says that he was in a position to see if there were any and states that he could have even seen a cigarette burning had there been one on the tail end of the trailer. Some witnesses who appeared at the scene of the accident after it was over said that they saw a string, which evidently was the string of lights attached to the trailer lying on the highway, but this was after the accident and presents no proof as to whether or not the lights were off or were burning at the moment of the impact. The testimony does prompt the thought however that if there was a string on the highway after the accident that they may not have been attached as firmly as the witness, Mayers, testified that he had attached them himself with a rubber band, says they were. Richard, the driver of the bus testified that there were no clearance lights on the truck and trailer as he approached and met it. Naturally he could not see if there was a tail light but in as much as the tail light and clearance lights were connected on the same string, it follows that if the clearance lights were not burning, the tail lights could not have been burning either.
It is on this point, apparently, that the trial judge formed his conclusion regarding the negligence of the truck driver, Russell. He showed himself by his testimony in this regard to be unworthy of belief. He testified that after leaving Thibodaux he kept an almost constant watchout for the clearance lights by looking for them through the rear-view mirror attached to the driver's side of the truck cab. He says that by looking in the mirror frequently, he observed that they were burning at all times. When confronted with the fact, as shown by a photograph taken of the truck at the scene of the accident during that same morning, that there was no rear-view mirror in the bracket attached to it, he broke down and tried to change his story by saying at first that he thought there was a mirror but then changed his testimony by saying that he kept tab on the lights by looking out through the window of his cab. When asked pointedly whether he wanted the court to believe that testimony or not he frankly stated that he did not. We agree with the trial judge that his testimony is worthy of very little consideration if he was no more careful with the truth on any other point than on this one.
We cannot say, therefore, that the trial judge manifestly erred in his conclusion on this charge of negligence against the defendant truck owner, any more than he did on the other as to whether the truck was stationary or not and agree with him that the plaintiffs have shown such negligence as would entitle them to recover unless they be barred by some negligence on the part of the driver of the Plymouth automobile, which negligence could also be imputed to his guest passenger. *Page 894 
We think that the contributory negligence which is charged against the driver of the car presents perhaps the closest issue to decide in the case. However, we feel satisfied that even though it be shown that he was contributorily negligent in some manner there is no basis on which to attribute any of his negligence to his fellow passenger.
We will not take up any time discussing the law with respect to the contributory negligence of the driver of an automobile under circumstances such as we have in this case as that law has been considered over and over again in cases of this kind. It is safe to say now, in view of the more recent decisions of the Supreme Court, and the decisions of this Court, that whether a driver who runs into the rear end of an unguarded truck or automobile, parked on the highway, during the night time, is guilty of negligence or not is a question which can only be decided on the particular facts in each particular case. One of the important facts to be considered is the bodily make-up of the vehicle which he runs into. A vehicle which presents a broad surface which should be readily discernible by means of his own head-lights for a distance of some 200 feet in front of him, such as the law provides his lights should project, presents a different situation than a vehicle whose rear end does not offer that kind of surface, but which on the contrary, offers to his view only a flat surface such as a platform. Much is said about the load of oil well mud on the trailer which formed a back ground surface for Albright to have observed in this case. In this connection, it is important to note that besides the back ground surface of the vehicle, its color and its reflection to light may also play a significant part. We may well assume in this case that this load presented a surface large enough for a driver approaching it to see and still the testimony is to the effect that it was covered with a tarpaulin, which admittedly, is the same kind of tarpaulin that was used on trucks during the late war to camouflage them and make it difficult for them to be seen.
Another important factor is one which has sometimes been referred to in cases of this kind to show the emergency which confronted the driver of the approaching vehicle and which makes it difficult, if not impossible, for him to see the parked vehicle. We refer to the fact that the driver in this case was confronted with the lights of the Greyhound bus which was approaching him from the opposite direction. He does not state that he was blinded by those lights but does testify that as his car emerged from meeting with that bus, he was about 30 feet from the truck and it suddenly loomed in front of him without any chance of his avoiding running into it.
It may be that so far, there isn't anything to show that he was guilty of contributory negligence, but when we come to consider the question of the speed at which he was going and what efforts he made to keep his car under control when he saw the Greyhound bus approaching him with its blinking lights, that is a matter which gives us very much more concern. He says that he slowed down his speed to about thirty-five miles per hour. He states that he was "searching" the road and that he then saw another vehicle following the bus at about a half or three quarters of a mile and that was all he could see. As he cleared the lights of the bus, he was right on the truck and couldn't avoid running into it. A speed of thirty-five miles isn't unreasonable when meeting a vehicle under ordinary circumstances but here, the driver of the car faced a situation that was a bit out of the ordinary. As the bus approached him he says that it blinked its lights about ten times and he found it necessary to "search" for the road. He then saw this other vehicle following the bus and that was all that he could see. Even then, however, he maintained his speed of thirty-five miles. Under the circumstances, he was called on to exercise a bit more prudence by slowing down to the point where, in his search of the road, he could make sure that all was clear ahead of him.
But considering the force with which he struck the trailer or the truck and the results of the impact, we can't believe that he was driving as slowly as he says he was. The axle and spring on this heavily loaded trailer were knocked forward of the frame on the left side and the four inch pipe coupling *Page 895 
rod was completely broken in two. The front end of the Plymouth car was entirely demolished and the body covered with bags of the oil mud thrown off the load by the force of the blow. In the recent case of Ledoux v. Beyt, La. App., 35 So.2d 472, we held that results somewhat similar from the force of an impact when an automobile ran into the rear end of a cane truck presented sufficient evidence to indicate negligence on the part of the driver of the car and we feel constrained to hold the same in this case.
We do not think however that the negligence of the driver can be imputed to his guest passenger. This court has consistently held that a guest riding in an automobile has the right to rely to a reasonable extent on the care and proper operation of the car by the driver. He is not called on to be on the same alert and to have seen what the driver should have seen. It is only where there is danger so apparent that he, as well as the driver, should have seen it, that he becomes negligent also if he fails to give warning or to protest if the driver's negligence continues. There was no such danger which became apparent to the guest in this case. Conceding that he saw the blinking lights of the Greyhound bus as it approached them, that was no indication of immediate danger to him. It may well have caused the driver to "search" for the road, as he says he did, but there was nothing to suggest any apprehension to the guest. The same degree of vigilance required of the one operating the car is not required of the guest. See Delaune v. Breaux, 18 La. App. 609, 135 So. 253, affirmed by the Supreme Court, 174 La. 43, 139 So. 753. Our conclusion therefore is that whilst Edward Lang Albright, the driver of the Plymouth car and his compensation and liability insurance carriers are barred from recovery because of his own contributory negligence, his negligence cannot be imputed to his guest passenger, the decedent, Gerald D. Albright, and the latter's widow and children as well as his compensation insurance carrier were properly held entitled to judgment in the court below.
After careful consideration of all the facts concerning the measure of damages, we are of the opinion that the amount allowed Mrs. Gerald Albright is justified but find the sum of $24,000, the total allowed for her three minor children is excessive. We will reduce that amount from the sum of $8,000 for each to the sum of $5,000 for each child and in this respect the judgment will have to be amended.
For the reason stated it is ordered that the judgment appealed from, in so far as it decreed liability in favor of the plaintiff, Edward Lang Albright, his liability insurance carrier, Employers Fire Insurance Company and the compensation insurance carrier of his employer, Employers Liability Assurance Corporation, Ltd., of London, England, be and the same is hereby reversed, set aside and annulled, and it is further ordered that the demands of the said plaintiffs be rejected.
It is further ordered that the judgment in favor of Mrs. Gerald Albright in the sum of $8,000 for each of her three minor children be amended by reducing the same to the sum of $5,000 for each child and that as thus amended, the said judgment be affirmed. All costs of this appeal are to be paid by the plaintiffs, appellees herein. *Page 896