ELLIS, Judge.
Plaintiffs, husband and wife, are seeking damages for injuries sustained as a result of a collision of plaintiffs’ car, which was being driven by the wife and in which the husband was a passenger, with an automobile of one of the defendants, Taylor, following a previous collision involving the cars of the defendants, Taylor, Durbin and McDaniel. The lower Court rendered judgment in favor of the defendants, dismissing the suit, at plaintiffs’ cost, and this appeal was taken.
This accident occurred on the night of November 7, 1953, at the intersection of Florida Boulevard and Croydon Avenue in the City of Baton Rouge.
After hearing all of the evidence the District Court gave written reasons for judgment, the pertinent parts of which are as follows:
“The evidence shows that a few minutes prior to the collision here involved a three car collision had occurred at this intersection involving automobiles being driven by the three individual defendants herein, McDaniel, Durbin and Taylor.
“Attached to these written reasons for judgment are four pencil sketches prepared by the writer and identified as Plats 1, 2, 3, 4. These plats, in so far *97 as street measurements are concerned, correspond exactly with a pencil sketch prepared by the writer after a personal inspection of the intersection during’ the trial of this case, which sketch was introduced and filed in evidence as Exhibit C-l, the offering being joined in by all parties to this suit. It will be observed that the plats show more of the street west of the intersection and less on the east than is shown in C-l. Plats 1, 2 and 3 show the approximate positions where the three cars (McDaniel-Durbin-Taylor) came to rest after the first collision. Plat 4 gives the same positions of the McDaniel and Durbin cars, but shows the approximate position of the Taylor car after the second collision, that is", the collision involved in this suit. However, the chief purpose of the four sketches is to indicate the movements of plaintiffs’ car immediately prior to the collision, as the court understands the evidence on this question.
“It is not important in this case to determine the exact positions of the McDaniel and Durbin cars at the time of the second collision since they were not involved in that collision, but it is important to determine the position of the Taylor car at that time. Taylor testified that after the first collision and prior to the second collision his car was facing south with about two feet of the front thereof protruding into the north eastbound traffic lane. Dur-bin testified it was protruding into this traffic lane about two and one-half feet.
“Two of the police officers testified that the Taylor car was about six feet in the eastbound traffic lane when they observed it after the second collision. The other police officer testified that it was partially in the traffic lane but did not estimate the distance. The ambulance driver, Constantine, was able to testify as to the position of the Kennison car after the second collision (Exhibit C-l), but he would not undertake to testify as to the exact position of the Taylor car at that time except to say that he was able to walk between the two cars. ■ At least two of the police officers testified that the front of the-Kennison car was jammed against the side of the Taylor car.
“The testimony of the police officers showed they were frequently confused as to directions and not always positive as to other facts.
“Taylor testified that the second collision moved his car several feet eastward and slightly southward.
“It is, therefore, my opinion that just prior to the second collision the front end of the Taylor car was about two and one-half feet in the north eastbound traffic lane, and after the second collision it was probably six feet in that lane. These are the distances shown on the attached plats. ■
“At the conclusion of the trial the court dismissed plaintiffs’ suit as to Durbin and his insurer, finding no evidence of negligence on his part.
“Defendants plead the contributory negligence of plaintiffs as a defense to this suit, alleging that such contributory negligence was the proximate cause of the collision.
“Pretermitting the question of the negligence of McDaniel and Taylor, or of either of them, we consider first the question of contributory negligence on the part of plaintiffs.
“Plaintiffs’ petition alleges (Paragraphs 14 and 15) that
“ ‘Your petitioner, Anna Mae Ken-nison, was driving the community automobile at a moderate rate of speed, East on Florida'Street in the left-hand lane for East-bound traffic and, as she approached the place of the accident above described, she was suddenly faced with the blocked highway in her lane of traffic.
“ ‘Your petitioner shows that she immediately applied her brakes in an effort to avoid the accident and at *98 tempted to swing her vehicle into the neutral ground, but was unable to stop before striking the right front and right side of the Taylor car with the front of her vehicle.’
“The evidence differs materially from the quoted allegations of plaintiffs’ petition. However, the evidence on these points was introduced without objection by defendants. This, in my opinion, had the effect of amending and enlarging the allegations of plaintiffs’ petition.
“It is undisputed that immediately prior to the collision plaintiffs’ car was proceeding east on Florida Boulevard in the south or outside traffic lane, with Mrs. Kennison driving, and with Mr. Kennison sitting beside her. She testified that she was traveling at a speed of 25 to 30 miles per hour, and that she was following another car at a sufficient distance in the rear to avoid the water and mud thrown by the rear wheels of the other car being spattered on the windshield of her car. The car which was traveling in front of the Kennison car is not further identified, except that another witness testified that immediately prior to the Ken-nison-Taylor collision a car traveling east on Florida Boulevard turned right on Croydon Avenue. For convenience this car will be referred to hereinafter as the ‘unknown car’.
“A heavy rain was falling as the Kennisons traveled east on Florida Boulevard. Mrs. Kennison • testified that the headlights on her car were burning and that both windshield wipers were in operation. She further testified that the driver of the car in front of her began to apply his brakes, slowed down, and began to turn to the right. Although the question will be considered later, the absence of negligence on the part of Mrs. Kennison up to this point is assumed without being so found. This necessarily carries with it the assumption that she was maintaining a proper lookout and traveling at a safe distance behind the unknown car, considering the speed of the two cars, the darkness, the rain, and the wet and slippery condition of the street. Therefore, we must place her car at least three or four car lengths to the rear of the unknown car when she observed it slowing down and beginning its right turn, and it is placed at approximately three car lengths, or 45 feet, to the rear of the unknown car in Plat 1. This plat indicates the positions of the unknown car, the Kenni-son car and the Taylor car at the instant Mrs. Kennison observed that the driver of the unknown car was applying his brakes, slowing down, and turning to the right. At that instant both eastbound traffic lanes were available to Mrs. Kennison except for the unknown car that was turning to the right out of the right hand lane some 45 feet in front of her, and the Taylor car that was protruding approximately 2% feet into the left hand lane some 95 feet in front of her.
“Plaintiffs contend that Mrs. Kenni-son was faced with an emergency, a traffic trap or hazard. If she was free of negligence up to the instant the unknown car slowed down and commenced its right turn she was not, in my opinion, confronted with any emergency, traffic trap or hazard. At this point, according to her testimony, she applied her brakes and began turning to the left into the left hand traffic lane. This turning to the left was not necessary if Mrs: Kennison was free of negligence up to‘this point, as has been assumed. See Plat 2. Then, according to her testimony, she saw the Taylor car blocking her lane of traffic, whereupon she reapplied her brakes with all the force at her command, causing her car to skid up on the neutral ground (See Plat 3), and proceed along the neutral ground, finally colliding with the Taylor car. See Plat 4. The fallacy of Mrs. Kennison’s deduction is evidenced by the fact that her lane of traffic was not blocked *99 by the Taylor car. At that point the right traffic lane and three-fourths of the left traffic lane were open to her. while she was at least 50 feet from the Taylor car. See Plat 2.
“We have assumed the absence of negligence on the part of Mrs. Ken-nison up to the time she observed the unknown car slowing down and commencing its right turn. However, it is my opinion the facts do not justify any such assumption. If she had been traveling at the speed she claimed, at the proper distance behind the unknown car, and had been maintaining the proper lookout, the chain of events that led up to the collision would not have developed. It is probable that she was traveling too near the unknown car under the circumstances, and that she was not maintaining a proper lookout. It is beyond question, in my opinion, that her speed was considerably greater than she admitted. Her own testimony is that she applied her brakes twice, the second time with full force, skidded up on the neutral ground, traveled along the neutral ground, and struck the Taylor car. It is evident that she struck the Taylor car with considerable force. This indicates a much greater intial speed than 25 to 30 miles per hour.
“It is my opinion that Mrs. Kennison was traveling at a speed considerably in excess of 30 miles per hour, that she was not maintaining a proper lookout or was driving too near the unknown car, and was close upon it before she observed that it was slowing down, and that in an effort to avoid colliding with it she applied her brakes full force and probably swerved somewhat to her left. Thereupon her car skidded out of control, up on the neutral ground and along the neutral ground until it reached the cut-through, at which point it struck the Taylor car.
“It is possible that Mrs. Kennison saw the Taylor car before she lost control of her own car. At least it is possible that she could have seen it if she was maintaining a proper lookout. But if she saw the Taylor car in its stationary position before she lost control of her own car there was nothing about its position to give her any concern, for the reasons heretofore stated. It is more probable that she did not see the Taylor car until after she lost control of her own car and was heading down the neutral ground directly toward the Taylor car. That would account for her testimony that the Taylor car was blocking her lane of traffic.
“Furthermore, I am of the opinion that the Kennison car skidded up on the neutral ground at a point considerably west of the point indicated on Plat 3. (It must be remembered that Plats 1, 2 and 3 are based on Mrs. Kennison’s own testimony and on the assumption that she was guilty of no negligence prior to her traffic maneuvers immediately before the collision). The only direct testimony on this point was that of Durbin. He testified that at the time of the collision he was standing on the neutral ground east of the Taylor car; that the Kennison car skidded up on the neutral ground about 100 feet west of the Taylor car; and that its speed at that time was at least 35 miles per hour. Although I have not based my conclusions on Durbin’s testimony, they appear to be entirely consistent therewith.
“Pertinent decisions setting forth the duty of the operator of a motor vehicle where weather conditions have limited visibility are: Rector v. Allied Van Lines [La.App.], 198 So. 516; Hogue v. Akin Truck Line [La.App.], 16 So.2d 366; Giorlando v. Maitrejean [La.App.], 22 So.2d 564. That excessive speed under particular circumstances renders a driver guilty of contributory negligence barring recovery is held in Albright v. Tatum [La.App.], 37 So.2d 888. No citations are required for the proposition that a driver is held *100 to have seen what he could have seen and should have seen.”
The reasons for judgment conclude the negligence of Mrs. Kennison was the proximate cause of the collision, and that such negligence is imputable to her husband. We believe the sole proximate cause of the collision was the negligence of Mrs. Kennison, and consequently, it is not necessary to discuss any imputation of negligence as recovery cannot be had against any of the defendants.
For the above and foregoing reasons the judgment of the District Court is affirmed.