99 So.2d 400 (1957)
Rayfield JACKSON
v.
Talbot YOUNG and The Great American Indemnity Company of New York.
No. 4522.
Court of Appeal of Louisiana, First Circuit.
December 23, 1957.
*401 Stafford & Pitts, Alexandria, for appellant.
Garland, DeJean & LaHaye, Opelousas, for appellee.
ELLIS, Judge.
This is a suit for personal injuries to Rayfield Jackson sustained in an accident which occurred on April 11, 1954. Trial was had on the merits on September 28, 1956 resulting in a judgment for the plaintiff in the amount of $4,526.70 for written reasons assigned the judgment being against Talbot Young and his insurer, the Great American Indemnity Company of New York. From this judgment on motion of counsel for defendant a suspensive appeal was granted on behalf of the insurer and devolutive on behalf of Young.
The facts surrounding the accident were elicited from the witnesses to the accident, viz., Talbot Young, one of the defendants; Rayfield Jackson, guest passenger and the plaintiff herein; Herbert Baptiste and Irvin Prudhomme, also guest passengers.
Talbot Young testified that on the morning of April 11, 1954 he saw the plaintiff walking along the highway. He stopped and invited the plaintiff to ride with him, at which time plaintiff entered the cab of the truck, sitting next to Young's other guest passenger, Herbert Baptiste. On their way to Opelousas defendant picked up Irvin Prudhomme and told the plaintiff to get in the back with him since four people could not sit in the cab. When they arrived in Opelousas, defendant Young went to Fontenot's Store in search of Herbert Baptiste's brother. Plaintiff and Baptiste entered the store and then got back in the truck. Defendant drove on down Patsy Street and as he approached the intersection of Patsy Street and Sidney Street, he turned left on Sidney Street. As he began his turn, he felt the truck slide on loose gravel and shifted into second and accelerated the truck in order to straighten it out. The result of this action was to cause the truck to whip around, throwing plaintiff backwards from the truck. Defendant did not realize this until he heard Prudhomme pounding on the cab of the truck.
The plaintiff substantially corroborated the entire testimony of Talbot Young. He further testified that after leaving Fontenot's Store Young did not inform him which direction he planned on going nor to which destination he was bound.
On cross examination, plaintiff admitted making a statement to Mr. Pharis, a claim adjuster for the defendant's insurance company. This statement was read into evidence and, in the main, it supported the testimony of both Talbot Young and plaintiff herein with one exception, and that was *402 as to the speed of the truck at the time plaintiff fell out.
The testimony of Herbert Baptiste substantially corroborated the testimony of Talbot Young and the plaintiff. He seemed to be confused as to whether the defendant shifted into second while negotiating the turn from Patsy Street to Sidney Street. However, he did state clearly the description of the turn from Patsy Street to Sidney Street. His testimony was as follows:
"Q. Then what did you do?
A. That is where we went on Patsy Street and crossed the railroad track and that is where we was driving down when we hit that Sidney Street and that is where he turned and he hit that loose gravel and the tail end of the truck whipped and that is where he went outside."
Morgan J. Goudeau, Jr., the Parish Surveyor and City Engineer for Opelousas testified that Patsy Street had a crown of twenty-three feet and Sidney Street had a crown of twenty-one feet, that both streets were gravel, and that Patsy Street from its intersection with Sidney Street extended 673 feet to a dead end at a drainage canal. He also stated that there were no intersections past the Patsy Street and Sidney Street intersection.
Irvin Prudhomme's description of the accident was as follows:
"We drove on and came on into town and we stopped at Mr. Fontenot's but Herbert and Talbot got out and we just stayed in the truck talking and that is where they got back in the truck and went across the track on Patsy Street and we kept on down up until Sidney Street and that is where he made the left turn and they had some loose gravel and when he hit the gravel, the car had struck it kind of slow and he gassed it and made the back whip and he fell and at the time I reached and caught Rayfield's leg but at the time I got too afraid that he might have grabbed at something and so I just let him went on out and that is where I hit on the truck for him to stop and he had done went a good piece before he stopped. Rayfield flipped over backwards."
James Pharis, Jr., was defendant's only witness to contradict plaintiff's witnesses concerning the circumstances surrounding the accident. He testified regarding statements obtained by him in which the witnesses stated that the defendant was driving approximately 15 miles per hour at the time plaintiff fell from the truck. Whether Young was going at 15 miles or 20 miles per hour at the time he made the left turn is incidental to the real negligence which consisted of the manner and method used in making the left turn, viz., the abrupt, sharp and drastic left turn which changed a speed ordinarily considered safe into an excessive and dangerous speed under the particular manner and means used by Young in making the left turn when he knew that the two guests in the rear of the truck were sitting on the narrow side of the pickup body.
The District Court found these facts to be substantially as we have set them forth above. Unless the District Court committed manifest error in determining the facts, they will not be disturbed on appeal, Ferguson v. Belcher and Son, 230 La. 422, 88 So.2d 806.
It appears that the trial judge was not in error in arriving at his finding of facts and we are satisfied that the defendant, while in the process of making a left turn was negligent in that the turn was made too suddenly and at too drastic or sharp an angle and the speed became excessive when considered in the light of Talbot's sharp left turn so that the truck started to skid and Talbot then shifted to second and accelerated the speed of the truck so as to cause it to whip around. It would have been a remarkable feat had plaintiff been successful in avoiding being thrown backwards from the truck. The direct result *403 of Young's negligence was that the plaintiff was thrown from the truck and his back injured in that he received a crushed vertebra.
The defendants have sought to attack the veracity of plaintiff's witnesses. It is well settled that the findings of trial courts as to the credibility of a witness will not be disturbed unless it is clearly erroneous. We have set forth in the main the witnesses' testimony and the only evidence defendants used to attack their credibility was the statements and the testimony of Mr. Pharis, the claim adjuster. These statements in the main do not differ from the testimony on the trial.
We find no error in the trial court's findings of fact and his acceptance of the credibility of plaintiff and his witnesses.
Counsel for defendants contend that the trial court was not correct in finding the defendant guilty of negligence and the plaintiff free from contributory negligence. In deciding these questions from the facts presented in this case, it will be well to review the decision of the courts in similar instances.
The Supreme Court in the case of Herget v. Saucier, 223 La. 938, 67 So.2d 543, 545, made this observation in dealing with the duty of a guest passenger which we quote:
"Generally, a guest passenger is not required to keep a constant lookout for the dangers of the highway, or to pay attention to the ordinary road and other traffic conditions incident to automobile driving, it being his right and privilege to place reasonable reliance upon the driver in charge of the car for the exercise of the necessary care and caution. Of course, if he is aware of a danger ahead which apparently is unknown to the driver, or if he observes that such driver is incompetent or otherwise unfit to operate the machine, a duty devolves upon him to take some precautionary action. White v. State Farm Mutual Automobile Insurance Company, 222 La. 994, 64 So.2d 245, [42 A.L.R.2d 338] (and authorities cited in both majority and dissenting opinions thereof.)"
The factual situation in the Herget case was not similar to the one in the instant case at bar, but we find the rule of law set forth above is applicable to the case at bar although the fact situation is different.
Another judicial expression of the duties that a driver owes to his guest passengers was made in Malone v. Hughes, La.App., 65 So.2d 665, 668 and was stated as follows:
"It is well established as a general principle in the settled jurisprudence of this state that a guest has the right to rely to a reasonable extent on the care of the driver and his proper operation of the vehicle, Delaune v. Breaux, 174 La. 43, 139 So. 753; Johnson v. National Casualty Co., La.App., 176 So. 235; Albright v. Tatum, La.App., 37 So.2d 888, 895. As has been many times stated by our courts a guest is not held to the exercise of the same degree of alertness and vigilance as is required of a driver. And there are other factors which must be considered in weighing the question of negligence on the part of a guest. It must be shown that the danger was or should have been apparent and that sufficient time existed within which the guest could have appraised the danger and warned the driver. As was said by Mr. Justice LeBlanc as organ of the Court of Appeal for the First Circuit in Albright v. Tatum, supra, (in which the general facts were analogous to the instant case):
"`He (the guest) is not called on to be on the same alert and to have seen what the driver should have seen. It is only where there is danger so apparent that he, as well as the driver, should have seen it, that he becomes negligent also if he fails to give warning or to protest if the driver's negligence continues. There was no such *404 danger which became apparent to the guest in this case. * * * There was nothing to suggest any apprehension to the guest. The same degree of vigilance required of the one operating the car is not required by the guest.'"
It is clear that a guest passenger is not called upon to bear the same duty of alertness or vigilance required of the driver of an automobile and that a guest has a right to rely, to a reasonable extent, upon the driver of an automobile.
It is also clear from the testimony in the case at bar that the defendant who was driving the truck requested that the plaintiff move from the cab of the truck into the rear end of the truck. It is equally clear that the defendant had actual knowledge that the plaintiff and Irvin Prudhomme were sitting on the sides of the truck. With the knowledge of the precarious position of the plaintiff and Irvin Prudhomme, the defendant, while proceeding down Patsy Street turned suddenly at a 90 degree angle striking the loose gravel. The truck began to slide on the loose gravel and the defendant shifted into second and accelerated it which in turn caused plaintiff to fall over backwards off the truck and Irvin Prudhomme to fall forwards towards the plaintiff. Defendant's driving in this case was careless and negligent, especially since he knew that two of his guest passengers were riding in a sitting position on the edge of the truck.
Defendants have urged that by riding on the edge of the truck, plaintiff has assumed the risk incident to his precarious position. In support of this contention, defendant cites Earll v. Wichser, 346 Pa. 357, 30 A.2d 803, 804. In that case a plaintiff sued to recover for injuries sustained when he was jolted from the tailboard of a truck owned and operated by the defendant. The court's rationale was:
"The movable tailboard of the open truck, with its tendency at every bump, however slight, to throw the person seated thereon into the air and go out from under him, was obviously not a safe place on which to ride. If plaintiff had sat in the body of the truck, where, according to his own testimony there was `plenty of room' `right around where I was at', and grasped its fixed sides, rather than the bouncing tailboard and flexible chain, he would not have fallen off. Plaintiff's action in riding on the unsteady tailboard was, in view of the obviousness of the risk and the ease with which it could have been avoided, an act of negligence concerning which reasonable men can have no difference of opinion."
Defendant also cited Brown v. Waller, La.App., 8 So.2d 304 where a plaintiff was injured by falling from a tool box on the top of a cab of a truck. However, in the Brown case the truck was moving in a straight line and there was no evidence that the defendant in that case was careless or negligent. Also, the plaintiff in that case had a lapse of memory and could not testify to any of the surrounding circumstances of the accident. Thus the court relied solely on the evidence adduced by the defendants, finding that there were no acts of negligence causing the accident.
Assuming that the plaintiff in the case at bar was negligent in placing himself in such a precarious position, was this negligence per se, thus rendering him contributorily negligent and barring him from recovery? Had the defendant driven the curve in a reasonable and prudent manner or slowed properly and given sufficient warning that he intended to turn, he would have been guilty of no negligence, whatsoever. If plaintiff had fallen under these circumstances, then he would have assumed the risk of his precarious position on the truck. The facts in the case at bar distinguish it from the cited cases.
The Orleans Court of Appeal in Stout v. Lewis, 11 La.App. 503, 123 So. 346, 348, was faced with the following situation: the plaintiff was riding on a running board on an automobile contra to a City Ordinance *405 prohibiting persons from riding on the running board or fender of the vehicle or hanging on or hitching on the rear of the vehicle. Plaintiff was injured when another car struck the automobile upon which plaintiff was riding. The court found that the plaintiff was guilty of negligence, but further discussed the assumption of the risk involved. He assumed the risk of his dangerous position if it may be said that his injuries were the natural consequence of the risk he assumed. The reasoning of the court in that case is applicable to the present:
"It is not sufficient to say that he would not have been hurt, if he had not been on the running board, because he might have remained upon the running board until he had reached his destination without injury, but for the negligent management of the car, on the running board of which he was riding; a risk which he did not assume. Whatever danger may have been involved in riding upon the running board, and such risk as would ordinarily be incident thereto, in the ordinary and usual operation of defendant's automobile, were assumed by the plaintiff. But plaintiff was a passenger and defendant owed him the duty of ordinary care, an obligation he was not relieved of by the plaintiff's carelessness."
The plaintiff in the case at bar occupied a precarious position and this position was known to the defendant. In occupying this position, he assumed any risks which would cause him injury while defendant was operating his truck in a reasonable and prudent manner. The plaintiff fell because the defendant travelled to fast under the circumstances and skidded on the loose gravel and shifted into second gear so that the truck whipped around. We find that these actions on the part of the defendant are the proximate cause of the injury sued upon and constitutes risk that was not assumed by the plaintiff.
As to the question of quantum, the plaintiff has not questioned the award by the District Court and, therefore, it stands as rendered unless it is excessive.
The award is well supported from the evidence. It was established that plaintiff suffered a fracture of the first lumbar vertebra, as testified to by Dr. R. E. Dupre and Dr. James Gilly. Plaintiff remained in Dr. Dupre's hospital twenty-five days, from April 11, 1954 until May 13, 1954. He was re-admitted because of excessive pain on June 5th and discharged June 22, 1954.
Dr. Gilly, an orthopedic surgeon, examined plaintiff on several occasions from May 11th until February 16, 1955 and once again September 1956. We recommended an Arnold type of back brace which plaintiff wore for more than three months, the exact length of time not being testified with certainty. Dr. Gilly on February 16, 1955 had another x-ray taken of the plaintiff's back and found that the fracture was well-healed but that the plaintiff's disability then existing was the result of treatment of the fracture in maintaining the back erect by means of the brace and that it was due to muscular contracture which existed on the date of the examination and x-rays. Plaintiff's disability at this time was such that the doctor stated that he should not do any hard work or labor of any kind. Based upon an assumption that Dr. Gilly could get the patient's wholehearted cooperation in the performance of gradual exercise, this doctor thought that it would take "six and twelve months now, possibly eighteen months to regain maximum rehabilitation."
We find no manifest error in the award of the lower court nor in otherwise in his judgment and it is therefore affirmed.