This is a suit for damages for personal injuries arising out of an assault which plaintiff alleges was committed on him on the night of September 29, 1946, without cause or provocation, by one of the defendants, Edward Blanchard, at the Step-In Night Club, at Lawtell in the Parish of St. Landry, where the said Blanchard was employed by the owner of the club, Zenon Joubert, as a bouncer. As a result of the assault plaintiff had to have one of his eyes removed and for this, as well as for the mental pain and anguish, physical pain and suffering, disfigurement and medical bills incurred, he seeks to recover the total sum of $25,063 from both Blanchard and Joubert.
There were pleas of vagueness and of no cause of action filed by the 'defendants which were overruled in the lower court. These do not seem to be urged on appeal and therefore they need not be considered.
The defendants filed separate answers in which each denies any liability whatsoever to the plaintiff and each further alleges that if the plaintiff suffered an injury to his eye while engaged in a fight with the defendant Blanchard, the injury was caused, solely and only by his own acts of violence towards Blanchard. The defendant Joubert pleaded as a further defense that if the plaintiff suffered the injury he claims by reason of the assault alleged by him, he, Joubert, cannot be held liable because at the time of the said assault, Blanchard was not his employee and if he was, he was not acting within the scope of his employment at the *Page 669 
time of the alleged encounter in which plaintiff sustained the injury he complains of.
The defendants in their answers, prayed for a trial by jury and as the result of said trial the jury rendered a verdict in favor of the plaintiff in the sum of $4,063 which was approved by a judgment signed by the district judge. Both defendants have perfected a suspensive appeal to this court.
[1] We will dispose of the special defenses urged by the defendant Joubert first. The testimony reveals that Edward Blanchard and another person by the name of Oscar Bihm were both employed by Joubert as bouncers at his club. The term "bouncer" is a familiar one used to designate persons employed as they were to preserve the peace in establishments such as night clubs and other places of amusement where people indulge in dancing, drinking and in gambling. In seems to be conceded that generally men so employed are deputized by the sheriff of the parish in order that they may exercise some sort of official authority. They are really deputy sheriffs, with commissions issued by the sheriff, and they are authorized thereunder to arrest those who commit infractions of the law at the places where they are employed. They are armed just as deputy sheriffs are with a pistol and in this case, our understanding is that they each carried a policeman's club or a billy. The appointment by the sheriff as his deputy is however purely a matter of convenience and service to the people who operate establishments of this kind and their entire salary or wages are paid by the proprietor of the establishment. That was so in this case and the records of the sheriff's office show that they did not receive any compensation at all from the sheriff's office. In effect therefore men so employed are the employees of those who engage their services and the latter may become responsible, legally, for any acts unlawfully committed by them in the discharge and the performance of their duties. We hold therefore that the defendant Joubert could be held liable for the acts of the defendant Blanchard in this case, as his employer, unless it be shown that at the time of the alleged assault, he was not acting in the scope of his employment.
With reference to that point the evidence shows that a disturbance occurred on the dance floor in the hall between other parties which resulted in their being taken out of the hall by Oscar Bihm, acting in his capacity as bouncer. One of the parties creating this disturbance was a friend of the plaintiff and he followed them out of the dance hall when they were ejected. Apparently things had quieted down but a few minutes later the disturbance started again on the outside of the hall and that is where the alleged assault was committed. It seems to be a contention that because it was committed outside of the dance hall that made a difference in the status of these two men's employment by the defendant Joubert; that they were employed by him to keep peace in his dance hall and he was not responsible for any action of theirs on the outside.
[2] If we are correct in stating that that is the contention made, we are not impressed with it as certainly it should make no difference where the encounter took place, either inside the dance hall or anywhere on his premises, if these two men were the employees of the defendant, Joubert. They were acting in their capacity as his employees and if they or either of them would be legally liable to any one, Joubert also would be responsible under the doctrine of respondeat superior.
The next and most important point in the case arises out of the contention made that the plaintiff himself was the aggressor in the encounter that took place between him and Blanchard and consequently he cannot recover. As shown by the pleadings this all occurred on a Saturday night at a dance hall where there was a large crowd congregated and, as was to be expected, there are numerous witnesses who testified on both sides. The testimony is very conflicting and to determine who was the aggressor it strikes us that we have to rely a great deal on the credibility of the witnesses and on the weight to be given to the testimony of each.
It seems to be agreed that the plaintiff was not a party to the disturbance that took place in the dance hall. One of his friends was engaged in it however and he *Page 670 
also went outside after he had been ejected by the bouncer, Oscar Bihm. Apparently things had quieted down after they were on the outside and what happened from then on, with regard to the fight that ensued between plaintiff and Blanchard, is a sharply disputed question of fact.
There is some testimony to the effect that Blanchard or Bihm or both, used their clubs in quelling the disturbance on the outside and that it was then that plaintiff became involved in what followed. He and his witnesses testified that all he did was to make a remark that some people thought they could do anything they pleased because they wore a badge and that that is what provoked Blanchard into hitting him with his club. The witnesses for the defendants, on the other hand, say that plaintiff's language was much more violent and severe and that his remark was to ask who was the son-of-a-bitch that had struck him. There is testimony to the effect that on being told that it was Blanchard he grabbed the latter by the collar. In the fight between them following this, Blanchard stuck his finger in plaintiff's eye causing the injury which necessitated its removal.
[3, 4] We do not find much difference in the quality and character of the testimony as we read it. We would judge that some of the witnesses who testified for the plaintiff were more or less well disposed towards him and believe also that most of the witnesses who testified for the defendants were people who were either employed by Joubert in his establishment in some way or another, or were friendly to him. But regardless as to how we analyze and apply the testimony we have to consider that here we have a case, which was tried by a jury, prayed for by the defendants themselves, and the jury, which apparently was unanimous in their verdict, chose to believe the witnesses for the plaintiff in preference to those of the defendants. The trial judge by signing the judgment he did, approved the verdict. In such cases the rule which attaches great weight to the findings of fact of the jury and the trial judge, and of their ability to judge of the credibility of the witnesses where there is a sharp conflict in the testimony applies with great force and in the absence of clear and manifest error the appellate court is always loathe to reverse on the question of liability.
[5] Counsel for defendants raise a last point with regard to the charge of the trial judge to the jury, which they contend was prejudicial to the interest of their clients. The point they make is this: That in charging the jury the trial judge cited two decisions which were favorable to the plaintiff and one which was favorable to the defendants. In citing the decisions favorable to the plaintiff he related the facts as they appear in the opinion whereas he did not do the same thing with regard to the decision that was favorable to the defendants. We do not find prejudicial and reversible error in this, as in his charge the district judge instructed the jury that they had to decide this case on the facts that were adduced during the trial and we do not think that it could be implied from his charge that the jury was to take into consideration and compare the facts which he related concerning the cases he cited to them as authority for them to reach their decision. He cited all three cases to support his explanation of what the law on the subject of assault was in a suit of this kind and we presume that the jury acted on what he told them was the law and applied the facts as they found them from the testimony in this case.
[6, 7] We find that the amount of the award made in this case is excessive. It may be that the jury was prompted by a certain amount of sympathy for a man who had suffered the loss of an eye and also they may have believed the testimony of some witnesses who tried to make it appear that the defendant Blanchard had deliberately gouged plaintiff's eye by twisting his finger around in the socket, thus making the assault a very aggravated one. We are not convinced by the testimony on this point and whilst we don't want to be understood as minimizing the seriousness of an injury such as the loss of an eye, we believe that in this case the award made is too great. We are of the opinion also *Page 671 
that there are mitigating circumstances which justify a substantial reduction in the amount of the judgment. The defendant Joubert, who will most probably have to pay the amount awarded demonstrated his desire to operate a lawful, quiet and orderly business by employing not one, but two men to preserve peace in and around his establishment. These are public places and on account of the nature of the entertainment they afford, some of their visitors at times indulge a bit too much in drinking, become obstreperous and it makes the task of these quasi-officials who are hired to maintain peace and order rather hard and difficult. Unconsciously they may exceed the authority which they have under the law. When they do their employer becomes liable for their actions. However, these are all circumstances which should be taken into consideration in mitigation of the damages to be paid. For these reasons we have decided that the award in this case should be the sum of $1,000 plus the medical expenses of $63 incurred by the plaintiff.
It is therefore ordered that the judgment appealed from be reduced from the sum of $4,063 to the sum of $1,063 and that as thus amended it be affirmed at the costs of the defendants, appellants herein.
ELLIS, J., absent.
J. CLEVELAND FRUGE, Judge ad hoc.