93 So.2d 332 (1957)
Walter A. ROUX
v.
Phillip ATTARDO and Nola Cabs, Inc.
No. 20755.
Court of Appeal of Louisiana, Orleans.
March 11, 1957.
*333 Henry L. Oulliber, Jr., and Robert J. Pitard, New Orleans, for defendants and appellants.
Charles E. McHale, Jr., New Orleans, for plaintiff and appellee.
McBRIDE, Judge.
Plaintiff, Walter A. Roux, seeks a recovery in damages in solido against Phillip Attardo, a taxicab driver, and his liability insurer, Nola Cabs, Inc., for personal injuries sustained on March 25, 1955, about 5:30 p. m., when he was allegedly struck by the taxicab operated by Attardo, who is sometimes hereinafter referred to as the defendant.
The case was tried by jury. From a verdict and judgment in plaintiff's favor for $1,033.18, defendants have perfected this appeal. Appellee has answered the appeal praying that the judgment be increased to the sum of $2,009.18.
There is no dispute as to certain facts. At the time of the alleged accident, competition was keen in the taxicab business in the vicinity of the University Place entrance to the Roosevelt Hotel, and three taxicab starters were stationed there each "hustling" fares for his respective cab company. Roux, the plaintiff, was temporarily employed as starter by the New Orleans Cab Company. Defendant, Attardo, drove up in his cab and discharged a passenger or passengers, after which he made some remarks which caused Roux to approach the cab and speak some words to him. Then Roux stepped from the sidewalk onto University Place.
The petition alleges:
"* * * Defendant Attardo then gunned his motor and started his car in the direction of uptown, striking plaintiff's left leg just below his left knee with the left front bumper of the vehicle.

* * * * * *
"That plaintiff received serious and painful injuries outlined below as a proximate result of the gross carelessness and negligence of defendant, Phillip Attardo, in the following particulars:
"(a) Failure to maintain a proper lookout at and immediately prior to impact with plaintiff.
"(b) Failure to maintain proper control over his vehicle at and immediately prior to impact with petitioner.
"(c) Failure to let plaintiff get out of the street before pulling away from the hotel into the path of plaintiff.
"(d) Shouting to plaintiff to make him turn around in the street, thus placing plaintiff in a dangerous situation easily accessible to being struck by Attardo's *334 car coming out from a stopped position in front of the entrance to the Roosevelt Hotel.
"(e) Failure to sound his horn or warn plaintiff of the approaching danger of his taxicab."
The answer alleges that plaintiff's injuries, if any, were caused through his own fault in:
"1. Making a vicious attack upon the defendant cab driver.
"2. In punching and attacking the driver of a moving vehicle.
"3. Failing to use proper care and caution, especially in view of the fact that a vehicle was moving."
In a plea made in the alternative, defendants charge that plaintiff was guilty of contributory negligence in the above-enumerated respects.
Roux testified that after defendant had assisted his passengers in alighting from the cab and collected his fare, he returned to the driver's seat and then called Roux a scab and a vile name. Roux claims he was incensed, but rather than create a disturbance at the hotel entrance he offered to "go around the corner" with defendant and settle the matter.
Roux says he then stepped into the street with the intention of crossing to the other side and that when he had reached about midway of the street, Attardo called out "hey, Roux" and he thereupon turned to reverse his course and had traversed a few feet when Attardo started his cab rapidly forward with the result that the left side of its front bumper struck him on the left leg throwing him against a limousine which was at the time parked at the curb. Roux stated he endeavored to grab the left rear fender of the cab to steady himself and keep from falling but the fender struck him in the abdomen precipitating him to the pavement.
Molinary, one of the taxi starters, in a large measure corroborates Roux's statements. This witness stated he heard defendant call Roux a scab and a vile name and then heard Roux offer to settle the matter elsewhere. Molinary says he saw Roux step from the curb to the street level, and that Attardo accelerated his car which moved forward and knocked Roux into the side of the limousine and then Roux fell into the side of the moving cab. The only material difference we are able to discern as between Roux's statements and those made by Molinary is that the latter said Roux reached a point about seven feet from the curbing when he was hit by the cab.
Plaintiff's other witness was Barras who drives a taxicab. Barras was seated in his vehicle at the cab stand near the hotel. He could hear none of the conversation between Roux and defendant, but he states he saw the cab start forward and strike Roux, and it appeared to him as though Roux made a grab for the cab as he was falling to the surface of the street.
Attardo gives a different version of the affair. He denied he called Roux names or that he initially made any remarks to him at all and insisted that what he said was "watch the New Orleans cabs," and that these words were addressed to his starter. Attardo said Roux then came up to the cab and grabbed him saying: "* * * what you trying to do, make fun of my company." Defendant claims that he and not Roux offered to fight it out and that Roux ran into the street just as he was starting the cab forward which necessitated his bringing the cab to an abrupt stop with screeching brakes. He says Roux then started toward the cab and "bumps his knee on my bumper. That's what caused his injury." Attardo further stated that Roux came to the side of the cab and punched at his face and "I was defenseless so I pulled right off." Attardo denies that his cab ran into Roux or that Roux ever fell to the pavement.
Kostella, the policeman on duty near the hotel, appeared for defendants. This witness *335 stated he was walking away from the entrance when his attention was attracted by the screeching of automobile brakes. Upon facing the direction whence the sound emanated, he saw Roux "either punching or grabbing at the taxicab driver." He claims the cab did not run into Roux or that he was knocked down.
The above constitutes the gist of the pertinent testimony respecting the occurrence under investigation, and we must comment that there appear discrepancies, which need not be pointed out, in the statements of all of the eyewitnesses. However, the composite of the testimony adduced by plaintiff would show that Attardo negligently ran Roux down.
The jury believed that testimony and concluded that plaintiff had made out a case of negligence by a preponderance of the evidence. After reading and analyzing the transcript of the testimony, we, as a reviewing court, could not possibly say that the jury incorrectly resolved the factual issues as no manifest error appears. To reverse the judgment would simply mean that we should entirely disregard what plaintiff and his witnesses had to say and to adopt as the truth the statements of Attardo and Kostella which the jury rejected.
No matter what it was that caused Roux to go into the street or howsoever great was the animosity existing between the parties, Attardo could and should have avoided running into him. Our own thought is that Attardo drove his cab off in a display of temper unmindful of what might be the consequences of his act and he was grossly at fault and guilty of one or more of the specifications of negligence contained in the petition.
It should be mentioned that defendants made strenuous effort to impeach plaintiff's credibility by a showing that he at one time had been charged with and convicted of theft and that on another occasion he was charged with carrying a concealed weapon. Plaintiff at first denied that the latter charge had been made against him, but he later retracted this denial. But, be that as it may, the jury heard and weighed all of the testimony, and notwithstanding the attempt at impeachment of plaintiff's testimony was willing to accept his testimony as worthy of belief.
Great weight attaches to the findings of fact by a jury as well as by a trial judge and to their ability to judge the credibility of witnesses where there is sharp conflict in testimony, and in the absence of clear and manifest error the appellate court will not reverse the judgment on the question of defendant's liability. Nixon v. New Orleans Ry. & Light Co., 121 La. 447, 46 So. 568; Goothye v. DeLatour, 108 La. 286, 32 So. 391; Moore v. Blanchard, La.App., 35 So.2d 667; Tillman v. Cangelosi, La.App., 40 So.2d 523.
Plaintiff went to the Charity Hospital for examination, and after being given first aid treatment the hospital physicians dismissed him on the same day advising that he see his private doctor.
Roux saw Dr. Carlo P. Cabibi a few days later, but the record does not show for what period of time he remained under Dr. Cabibi's care. Dr. Cabibi diagnosed plaintiff's complaints as generalized contusions of the back, chest and both legs, especially the left, with contusions of the right lower rib cage and a lumbosacral sprain and strain. The patient was given sedation and from time to time received diathermy treatment. He was instructed to apply heat to the injury. A back brace was prescribed. Dr. Cabibi evaluated plaintiff's disability at eight to ten weeks.
At the behest of plaintiff's counsel, Dr. Edward T. Haslam, orthopedic surgeon, made an examination of plaintiff on April 20, 1955. He testified that the patient walked with a limp, hurried off his right foot, and had muscle spasm in his low back region. Bending was limited and accompanied by increased spasm in the muscles of the back. Dr. Haslam stated this objective *336 finding could not be voluntarily controlled by the patient. He further testified:
"Q. Could you testify * * * would you give us your opinion as to the type and severity of pain that this man underwent as a result of this lumbosacral sprain that you found? A. Well, I think only what I described in my history. I mean the type of thing he told me he was experiencing was the sort of pain that people with lumbosacral sprains and contusion of the coccyx usually have, that is, pain with the bowel movements, coughing and sneezing and * * *"
Dr. Haslam stated that while a physician can never predict how long a person will be incapacitated from such injury, he believed that a period of 2½ to 3½ months could be considered as the average time.
Roux claims that he was unable to return to the duties of cab driver, which was his regular occupation, for 3½ to 4 months, while his wife testified he was incapacitated for more than 5 months. In view of this uncertain testimony both from the lay witnesses and the doctors, we are unable to determine exactly how much loss of earnings Roux sustained by virtue of his injuries, but we are convinced that he was incapacitated from working for a considerable time. His salary was $28 per week.
Plaintiff incurred medical expenses amounting to $63.18, consisting of the sum of $23.18 for a back brace and the bill of Dr. Cabibi for $40. He also presented a bill for $25 rendered by Dr. Haslam to his attorney for the orthopedic examination of April 20, 1955, and a report thereon and a bill of $45 for X-ray pictures of plaintiff which Dr. Haslam required in connection with his examination, which is likewise made out to plaintiff's attorney. The amounts of these bills cannot be allowed as items of damage for the reason that there is no law which renders the defendant in a damage suit liable for the bill of a physician for examining an injured plaintiff when the sole purpose of the examination is to acquaint the physician with the claimant's condition in order to equip and prepare himself to testify in the case as an expert witness. See O'Connor v. American Mutual Liability Ins. Co., La.App., 87 So.2d 16.
In addition to the bill of Dr. Cabibi and for the cost of the back brace, the judgment would allow plaintiff $970 for his personal injuries, pain and suffering, and loss of earnings, whatever they may be, and as plaintiff has sustained no permanent injuries we believe that the judgment generally does substantial justice and there is no reason why it should be disturbed or revised in any way.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.