CULPEPPER, Judge.
This is a suit for damages for breach of contract. Plaintiff, a general contractor, contends that in preparing to submit a bid for the construction of an elementary school building in Marksville, Louisiana, he mailed cards to the defendant and several other electrical contractors for the purpose of having them submit bids to furnish the *208 labor and materials for the electrical work set forth in the plans and specifications. Plaintiff contends further that pursuant to this request the defendant came by plaintiff’s office and picked up the plans and specifications in order to figure the price for a bid, and that on the night before the general contractors were to submit their bids to the school board the defendant went to plaintiff’s office and there in the presence of plaintiff and his employee, Mr. Descant, submitted an oral bid of $14,750 covering the base price plus the alternates which were eventually adopted by the School Board. Plaintiff and his employee, Mr. Descant, testified that on the morning the general contract was let, Tuesday, March 12, 1957 at 10:00 a. m. the defendant notified them that he had obtained a better price on the electrical fixtures and could reduce his bid by $250 if plaintiff wished to do so in computing his overall figures.
At the letting the plaintiff learned that he was the lowest bidder of the general contractors with a figure of $231,738. Defendant was not present at the letting but plaintiff testified that he telephoned defendant that night and advised him that they were both the low bidders and that he wanted defendant to do the electrical work at the price submitted and that as soon as he signed the formal contract with the School Board he would prepare a written subcontract for signature by plaintiff and defendant as to the electrical work. Plaintiff signed the general contract on April 11, 1957 and he testified that a few days thereafter he talked to the defendant and defendant agreed to come by his office and sign the subcontract. However, when defendant went to plaintiff’s office, he stated that he had decided to quit the electrical contracting business and that he had obtained employment as an electrician in Alexandria and could not sign the contract. Approximately two months later plaintiff mailed to defendant the written subcontract demanding that he sign and return it but defendant still refused. Then plaintiff obtained new bids from the five electrical contractors who had originally submitted bids to him and accepted the lowest of $17,600 pursuant to which the work was completed. Plaintiff then brought this suit for the sum of $2,850 representing the difference between defendant’s bid and that of the electrical contractor who actually did the work.
The defendant and his witnesses testified to an entirely different version of the facts from that represented by the plaintiff and his witnesses as set forth above. Defendant contends that although he had been in the electrical contracting business for many years and had previously submitted many bids to plaintiff and had actually performed many electrical subcontracts for him, that shortly before the letting of this particular general contract defendant had become involved in financial difficulties and he and wife and sons had decided to quit the electrical contracting business. Defendant contends that on the insistence of plaintiff and purely because of the previous friendly relations between them he prepared for the plaintiff an estimate for use by the plaintiff in determining whether or not the electrical contract bidders were too high or too low. Defendant testified that on the night before the letting when he went to plaintiff’s office he made it clear to plaintiff that he was quitting the contracting business, that he could not do the work and that he was submitting only an estimate and not a bid. Furthermore, defendant denied that he received any telephone calls from plaintiff on the day of the letting in which plaintiff accepted defendant’s bid. Defendant also of course denied that he ever agreed to stop by plaintiff’s office and sign a written contract.
In addition to the evidence regarding this particular transaction, the plaintiff introduced the testimony of several contractors in an effort to show that it is customary in this type of business for the subcontractors to submit oral bids which are also accepted orally by the general contractors after the letting with the understanding that the subcontracts would be *209 reduced to writing and signed after the general contract is signed. Defendant on the other hand introduced the testimony of several contractors in an effort to show that it is customarily understood that neither the general contractor nor the subcontractor is bound until the written contract is signed. From a reading of the testimony of these various witnesses as to the custom in the trade it is apparent that they had very little understanding of the legal effect of their oral bids or of the oral acceptance thereof or of the fact that these oral agreements were later reduced to writing. The legal principles involved are well established but the facts regarding the nature of the agreement between the parties in each individual case of course determine whether or not an oral bid constitutes a continuing offer which can or cannot be changed and whether an oral acceptance of an oral bid completes a binding contract between the parties or whether the contract does not become binding until it has been reduced to writing and signed. In the case of Reimann Construction Company v. Heinz, Orleans Appeals 1931, 17 La.App. 687, 137 So. 355, 356, the Court in considering a factual situation very similar to the one at bar stated the law in this regard as follows:
“It is true, of course, that if parties, in contemplation of making a written contract, agree on some of the terms thereof, but intend later to settle other remaining points and to then execute a written evidence of their agreement or if parties, having agreed verbally on all points, further agree that no contract shall result until the total understanding is reduced to writing and signed, then the verbal agreements are not binding upon either, since it is the intention of both that the document to be later executed shall evidence the whole contract. Laroussini vs. Werlein, 52 La.Ann. 424, 27 So. 89, 78 Am.St.Rep. 350.
“But it is also well settled that, if all terms and conditions are agreed to and it is later suggested that the agreement be reduced to writing so that the contract will be less mutable and more easily proven, then the verbal contract is entirely binding, even though the written contract may not be later executed. Carlin v. Harding, 10 La. 223, 225.”
In the present case the lower court found in a brief written opinion that “ * * no contractual relationship was ever established between the parties to this proceeding.” It might be said that from this brief written holding we cannot determine whether the lower court found that no offer by defendant was proved or that no acceptance by plaintiff was proved or that the understanding of the parties was that neither would be bound until the subcontract was reduced to writing and signed. However, from a reading of the record, it is readily apparent that the principal factual issue is whether defendant submitted a bid in the nature of a continuing offer or whether he simply estimated the price in order that the plaintiff might determine whether or not the other electrical contract bidders were in line. In his testimony, the defendant takes no other position but simply that he was submitting an estimate and not a bid and the plaintiff, on the other hand, testified that defendant submitted a bona fide bid. This was the factual issue on which the lower court ruled that no contractual relationship was ever established. In so ruling the lower court necessarily found that plaintiff had failed to sustain his burden of proving that defendant had ever offered or agreed to do the work.
The testimony on this factual issue is in hopeless conflict. Plaintiff and his employee, Mr. Descant, testified positively that defendant came to their office the night before the letting and submitted a bid of $14,750. Mr. Herbert Armand, another employee of the plaintiff, was in the office that night but he did not hear the conversation between the plaintiff and defendant. On the other hand the defendant *210 testified categorically that he fully explained to plaintiff he was submitting only an .estimate and not a bid and that he could not do the work because he was quitting •the contracting business. Defendant’s testimony is corroborated by his son who testified that previous to the letting the defendant had gone out of the contracting business and obtained employment in Alexandria where he has worked ever since. Defendant’s son testified further that defendant had told him he was not going to fake the job but was simply furnishing plaintiff with an estimate of the price. Further corroborating defendant’s testimony is the undisputed fact that he actually has not engaged in the electrical contracting business since sometime previous to the date of the letting, and the further undisputed fact that defendant did not submit bids to any of the other general contractors who were bidding on this particular job. Mr. George Lemoine, brother of the plaintiff, testified that he phoned defendant the night before the letting requesting a bid from him but defendant advised him that “he was not taking the job”. Also, Mr. Jusselin, one of the electric.al subcontractors who submitted a bid, testified that it was his understanding that defendant did not bid.
From this conflicting testimony the lower court found that plaintiff had failed to sustain its burden of proving a contractual relationship existed between the parties. We are unable to say that the lower court was manifestly erroneous particularly in view of the well established jurisprudence that findings of fact by the lower court based on creditability of witness will not be disturbed on appeal, unless clearly erroneous. Roux v. Attardo, La.App., 93 So.2d 332, Jackson v. Young, La.App., 99 So.2d 400.
For the reasons hereinabove set forth the judgment of the lower court is affirmed. All costs of this appeal are assessed against the plaintiff.
Affirmed.