REID, Judge.
This is a suit for damages for the illegal repossession of an automobile from the Plaintiff by the Defendant. The Defendant sold to the Plaintiff a 1950 Dodge Sedan for $275.00. Plaintiff signed a promissory note for $288.00 payable to the order of Defendant, and the note was secured by a chattel mortgage properly recorded. The note was to be repaid in twelve (12) equal ■consecutive monthly payments of $24.00, payable $6.00 per week, the first installment being due on October 26th, 1957.
The Plaintiff was employed by the Defendant and his weekly payments on the note were made by deducting same from the weekly pay check. These payments were made up until March 21, 1958, the ■date of the last payment. Plaintiff at this time became sick and was no longer able to work at Defendant’s place of business and failed to make additional payments. When he could be employed he earned some money by cutting grass. He was some three weeks in arrears when Defendant’s Collectors called on him asking him to pay up the arrearage or surrender the car, either by signing a release or turning the car over to the Defendant to be stored until such time as he could take care of his arrearage.
On the night of April 16, 1958 Robert Richard Sterling, an employee of the Defendant, and Philip Aramello, an ex-employee of the Defendant, went to Plaintiff’s home and secured possession of the car, although the Plaintiff refused to sign any release. The point of issue in this ease is whether or not the car was taken from the Plaintiff by force or threats, and against his consent. The testimony as to what did happen on this night is very conflicting between the witnesses for the Defendant and the Plaintiff.
The car was stored at Defendant’s garage until May 20th, 1958 when the Defendant had the car seized by the sheriff of East Baton Rouge Parish in the foreclosure proceedings entitled Standard Motor Car Company, Incorporated versus Johnny Lee Cage, No. 64,303.
On May 20th, 1958 Plaintiff filed this suit for the illegal conversion and wrongful seizure without consent or legal process of law, praying for damages in the amount of $2800.00. This consists of $220.00 for value of Plaintiff’s automobile; $280.00 for loss of earnings suffered as a result of illegal seizure; $100.00 for loss of use of the vehicle; $1500.00 for humiliation, embarrassment and defamation; $700.00 attorneys fees.
The lower Court rendered Judgment in favor of the Defendant and dismissed Plaintiff’s suit at his costs.
The Plaintiff prosecuted this Appeal from this Judgment alleging the following specification of errors:
“1. in finding that the plaintiff voluntarily consented to the defendant taking possession of his automobile on the night of April 16, 1958;
“2. in failing to find that on the night of April 16, 1958 the defendant illegally seized and wrongfully con *430 verted plaintiff’s chattel to their own use;
“3. in not giving judgment for the plaintiff and awarding the damages suffered and prayed for by the plaintiff.”
Plaintiff cited numerous cases to the effect that where a chattel is illegally repossessed without resorting to judicial process the Defendant in order to avoid the result of legal liability must show that Plaintiff consented to its removal either orally or in writing.
We have no quarrel with this line of authority because there is no question but what that is the law. However, the three errors pointed out by the Plaintiff are issues of fact and boil down to the question “was the Trial Court incorrect in finding from the facts that the Defendant repossessed the vehicle with the consent of the Plaintiff?”
The facts show that the two men, Sterling and Aramello, went to Cage’s house and he was not there. They went to a grocery store on the corner where they were told that they might find him at his brother’s house. They went to his brother’s house where they found him. They discussed the matter with him, and told him they wanted to collect the money, or pick up the car, either on a full release or to be stored until the payments were brought current. He told them that he was unwilling to sign a release but that they could have the car. Sterling called the Standard Motor Car Company and was instructed to bring the car in if the Plaintiff was willing to let them take the car.
Plaintiff went with the two men to make the phone call and when informed of the instructions given to Sterling by Mr. Mann he told them that he would let them have the car if they wanted it, but he was not going to sign the release. They then returned to Plaintiff’s brother’s home and Plaintiff said that he wanted to take some tools to his home. Sterling went with him to his home where the Plaintiff proceeded to unlock the trunk of the car and take his. tools out and then closed the trunk of the car and gave the keys to Sterling. Sterling then drove the car to Defendant’s lot and stored it where it remained for a period from April 16th to May 20th, 1958 until it was seized by the sheriff.
Sterling’s testimony was corroborated by Aramello.
The Plaintiff testified on his behalf and was his only witness. He corroborated the Defendant’s two witnesses as to the fact that they called on him for the money or the car; the call from Sterling to Mr. Mann, Secretary-Treasurer of Defendant Company and the return to his brother’s-home where he admitted taking his tools-out of the back of the car, but he claimed he put the keys on the front seat and did not hand them to Sterling. He testified further that “he wasn’t pleased with them taking the car, but he didn’t say nothing.” The morning after the surrender of the car the Plaintiff consulted the Legal Aid Committee of the Baton Rouge Bar, but there is no evidence as to what actually transpired between Mr. Babin, one of the Legal Aid Attorneys, and the Defendant Company.
The car remained in storage at Defendant’s lot until they finally filed foreclosure-proceedings. The Plaintiff filed the suit for damages.
The Trial Judge believed the testimony of Defendant’s witnesses, Messrs. Mann, Atkinson, Sterling and Aramello and held there was no illegal possession or conversion of this automobile.
“Where the veracity of witnesses is involved the lower court is in a better position to pass upon their testimony because the district judge has the opportunity of observing the demeanor of the witnesses when they are giving their testimony. Under such circumstances, we are in no position to say that the district judge manifestly erred *431 in his findings.” Barlotta v. Walker, 223 La. 157, 65 So.2d 122.
“It is well settled that the trial judge’s findings on question of fact, and particularly on questions involving the credibility of witnesses who testified before him, are entitled to great weight on appeal and will not be disturbed unless clearly erroneous.” Orlando v. Polito, 84 So.2d 433, 228 La. 846. See also, Robbins v. Mydland, La. App., 81 So.2d 561; Roux v. Attardo, La.App., 93 So.2d 332; Jackson v. Young, La.App., 99 So.2d 400.
Where case involved solely question of veracity of two sets of witnesses, Court of Appeals would be warranted in reversing Judgment only if manifest error existed. Roux v. Attardo, La.App., 93 So.2d 332.
The Court can find no manifest error in the decision of the lower Court and accordingly affirms the Judgment in this case.
Judgment affirmed.