HALL, Judge.
Plaintiff brought this suit against Neeb Kearney & Co., Inc. and its public liability insurer for damages for personal injuries arising out of the falling of a stack of coffee on the Congress Street Wharf in the city of New Orleans on January 25, 1962. Atlantic & Gulf Stevedores, Inc., plaintiff’s employer, intervened seeking reimbursement for Workmen’s Compensation it had paid plaintiff. The case, tried before a jury, .resulted in a verdict in favor of the defendants. The District Judge rendered judgment consonant with the verdict, dismissing both the main suit and the intervention. Plaintiff and the intervenor appealed.
Plaintiff contends that Freddie Cagler, the operator of one of Neeb Kearney’s fork-lift trucks, negligently permitted a pallet which was loaded on his truck, to strike and cut one of the bags in a twelve foot stack of coffee near which plaintiff was standing causing the coffee to pour out, thus undermining the security of the stack and causing it to fall over on him.
Defendant’s primary defense is that Freddie Cagler was working in another area of the wharf at the time and had nothing to do with the accident.
The principal issue in the case is one of fact and the testimony is in irreconcilable conflict.
Plaintiff was employed as a checker by Atlantic & Gulf Stevedores, Inc., contract stevedores for a steamship company. On the dajr in question he was assigned to check the transfer of a cargo of coffee which was being moved from the Congress Street Wharf by Neeb Kearney & Co., Inc., the consignee of the coffee. The coffee, upon arrival in port, had been removed from the ship on small platforms or pallets and stored by the stevedores in stacks four pallets high toward the back or landward side of the wharf. Each pallet held 15 sacks of coffee, weighing from 135 to 154 pounds each, placed on the pallet three sacks high, so that each storage stack was about 12 feet high and contained in the neighborhood of 6,000 pounds of coffee.
It was the duty of Atlantic & Gulf Stevedores to furnish a fork lift truck to break down the stacks of coffee from • their storage places on the wharf and to place the pallets of coffee near the .roadway (called the “dray area”) which runs lengthwise the middle of the wharf, in such position as to make them available for the consignee (in this case Neeb Kearney & Co., Inc.) to pick up the pallets with its own fork lift trucks and to transfer the coffee to its drayage vans for hauling to its own. warehouse.
On the day of the accident when Neeb Kearney’s crew arrived to take delivery of its consignment the Atlantic & Gulf lift truck was busy elsewhere and temporarily unavailable to break the coffee out from storage. In order to get the work started, Neeb Kearney’s foreman got permission to send his own lift truck driver, Freddie Cagler, to commence breaking down the coffee. Sometime later (how much later is not clear) the accident occurred.
Plaintiff testified that he was standing in the storage area three or four feet from one of the stacks of coffee when a lift truck, (which he presumed to belong to Neeb Kearney because he knew Atlantic & Gulf’s lift was busy elsewhere), in turning away with two pallets of sacks which it had removed from a storage stack, ac- *74 cidently struck a sack (being one of the bottom sacks on the second tier of pallets) in the stack near which he was standing with the sharp edge of one of the pallets on the truck, tearing a hole in the sack and causing the coffee to pour out under great pressure. He testified that he was looking at the sack and saw it cut by the pallet edge. Plaintiff further testified that he grabbed a piece of wrapping paper which he found lying on the floor and was endeavoring to stuff the paper in the hole to stop the flow of coffee when the whole stack fell on him causing his injuries.
None of the other witnesses in the case saw the accident. Several of them testified that upon hearing someone cry out they looked up and saw that the stack had fallen. Plaintiff’s father, an employee of the steamship company in general charge of the dock, testified that when he turned to look he saw the pallets falling, but saw no one working near the stack although he stated that he saw a lift truck backing away about 10 to 20 feet from the stack. Plaintiff’s father was the only witness who testified to the presence of the lift truck in the vicinity. All other witnesses testified that they saw no one near the stack.
Plaintiff’s witnesses testified on cross-examination that coffee bags are frequently broken during the stevedoring operations of unloading the ships and stacking the coffee in the storage area. They also testified that stacks sometime topple over from improper stacking but that the stevedore employees are constantly checking to see that broken bags are removed and that the coffee is properly stacked.
The crucial point in this case is the whereabouts of Freddie Cagler and the Neeb Kearney lift truck when the stack fell. Plaintiff’s witnesses endeavor to put him near the fallen stack. One of them had seen him there with his lift truck sometime before but no one saw him there at the time of the accident. Defendants’ witnesses testified that when , they looked up after hearing the warning cry Freddie Cag-ler was working with his lift truck in the dray area some distance from the fallen stack, helping the Neeb Kearney gang with its van loading operations.
Freddie Cagler testified that upon arrival at the wharf that morning and upon learning that the Atlantic & Gulf lift truck was temporarily unavailable he was instructed by his foreman to break down some of the coffee from the storage stacks. He testified that he made two trips into the storage area with his lift, broke down one stack and transported it to the dray area, then became busy with his lift in the dray area preparing the coffee for loading in the van ; that while he was working in the dray area he heard, the warning shout. He testified that he had not been near the fallen stack for 10 or 15 minutes. Plaintiff testified that it was only a matter of seconds after the bag was cut that the stack fell on him.
None of the witnesses were in even approximate agreement as to time or distances. Plaintiff suggests that Cagler could very well have cut the bag and darted out to the dray area before the stack fell, but according to Cagler he had not been near the stack for 10 or 15 minutes.
Defendants were not .required to explain why the stack fell. Plaintiff had the burden of proving that defendants caused it to fall. Further discussion of the testimony would serve no useful purpose. The testimony is conflicting as to all material aspects of the case and it is impossible to reconcile it. The jury had to decide whose witnesses it would believe, and we find no manifest error in its verdict in favor of the defendants. Roux v. Attardo, La.App., 93 So.2d 332; Knighten v. American Automobile Insurance Company, La.App., 121 So.2d 344.
We find it unnecessary to discuss defendants’ alternative defense of contributory negligence or their further alternative defense invoking the borrowed-servant rule.
For the foregoing reasons the verdict and judgment appealed from is affirmed.
Affirmed.