160 So.2d 19 (1964)
Emma Fontenot BERTRAND et al., Plaintiffs and Appellees,
v.
MISSOURI PACIFIC RAILROAD COMPANY et al., Defendants and Appellants.
No. 1020.
Court of Appeal of Louisiana, Third Circuit.
January 15, 1964.
Rehearing Denied February 11, 1964.
Writ Refused April 17, 1964.
*20 Dubuisson & Dubuisson, by James G. Dubuisson, Opelousas, for defendants-appellants.
J. Nilas Young, Eunice, for plaintiffs-appellees.
Stafford & Pitts, by Grove Stafford, Jr., Alexandria, for intervenor.
Before TATE, SAVOY and CULPEPPER, JJ.
CULPEPPER, Judge.
This case and its companion cases, "Cursey J. Vidrine, et al. v. Missouri Pacific Railroad Company" and 160 So.2d 25 "Mrs. Anita Ledoux Rider, et al. v. Missouri Pacific Railroad Company", 160 So.2d 26, are wrongful death actions arising out of a collision between a dump truck and a freight train at a railroad crossing in the town of Basile, Louisiana. The plaintiffs are respectively the widows and heirs of the three men killed in the accident. The defendant, Missouri Pacific Railroad Company, is the owner of the freight train. A jury in the lower court returned verdicts in favor of all plaintiffs and against the defendant. The trial judge, being of the opinion the awards were inadequate, ordered the defendant to enter additurs or in the alternative submit to a new trial, under the provisions of LSA-C.C.P. art. 1813. Pursuant to this order the defendant agreed to the additurs, expressly reserving all of its rights on appeal. From these judgments the defendant has appealed.
For the purposes of this appeal, the principal issues are these: (1) Under the circumstances, was the crossing in question so unusually hazardous as to constitute a dangerous trap? (2) Was Alway Rider, driver of the dump truck, guilty of contributory negligence barring recovery by his survivors? (3) Were the passengers in the truck guilty of any independent contributory negligence? (4) Was the defendant railroad company guilty of any negligence constituting a legal cause in fact of the accident?
At the outset it is necessary to describe the locality where the accident occurred. The town of Basile, according to the United States Census of 1960, has a population of 1,932 persons. The defendant's railroad runs in an east-west direction approximately through the center of this incorporated town. Within the corporate limits there are six streets which cross the tracks in a north-south direction.
The accident occurred at Fusilier Street which crosses the railroad right of way at a 90 degree angle. The crossing is approximately level, there being no grade leading up to it from either the north or the south. There were no automatic signalling devices. There was only the standard "Louisiana Law Stop" sign. At the crossing itself, there are four sets of tracks. North of the main line tracks a distance of 14 feet there is a switch track and 13 feet north of the switch track is the "gin spur track". 28.5 feet north of the north rail of the gin spur track, and a distance of 54.7 feet north of the north rail of the main line, there is located the standard "Louisiana Law Stop" sign near the west edge of Fusilier Street. *21 About 8 or 10 feet north of the railroad stop sign, a gravel driveway leaves the west side of Fusilier Street and runs in a westerly direction approximately parallel to and a distance of about 55 feet from the main line track, all the way through the block to Lewis Street, a distance of 400 feet.
At the Fusilier Street crossing the defendant's railroad right of way extends 100 feet north of the main line tracks. The width of the right of way to the south is immaterial since the truck in the instant case was approaching from the north. This width of 100 feet north of the main line tracks extended westward a distance of 1,050 feet, at which point it reduced to 50 feet.
The depot for the town of Basile is located on the south side of the main line tracks and a distance of 181 feet west of Fusilier Street. The fourth set of tracks is the depot spur which is south of the main line. Near the crossing, and on the east side of Fusilier Street, near the north side of the gin spur track, is located Guidry's Feed Store, from which location several witnesses heard the train whistle and the crash at the crossing.
Although Fusilier Street is not a part of the state highway system, nor is it a through street leading out to State Highway 191, it is used by a considerable amount of traffic, particularly that going from the business area located about one block north of the tracks to a residential area located a few blocks south of the tracks.
At about 11:00 a. m. on July 12, 1962, during clear, dry weather, defendant's train was approaching the Fusilier Street crossing from the west. This was an extra, not a regularly scheduled freight train, consisting of an engine and 12 cars. The train was proceeding at 40 MPH, which was within the railroad company's self-imposed speed limit for freight trains of 49 MPH in the town of Basile. There was no statute or ordinance as to speed of trains at this location.
At about the same time, a 1949 model International dump truck, belonging to the town of Basile, was proceeding in a southerly direction on Fusilier Street at a speed of about 10 MPH. The occupants were employees of the town of Basile. Alway Rider was driving, Dolsey Bertrand was seated in the center of the cab and Jessie Sanders was seated on the outside next to the door. Joseph Vidrine and Dufford Mott were standing in the back of the dump truck next to the cab. Mr. Rider slowed from 10 MPH to about 5 MPH to negotiate this bumpy crossing. He did not stop at the stop sign, nor did he ever stop. He continued to move forward at a very slow rate of speed until the truck was struck broadside by the train at the crossing. The front of the engine struck the right side of the dump truck about 6 inches behind the cab. Mr. Mott, who was standing in the back managed to jump out before the crash. Mr. Sanders was thrown clear when the right hand door of the cab flew open after the crash. The other three occupants of the truck were killed.
The first issue which we will consider is whether this case falls within the "dangerous trap" doctrine as set forth in Renz v. Texas & Pacific Railway Company, La.App., 138 So.2d 114 (3rd Cir.App.1962), Simon v. Texas & New Orleans Railroad Company, 124 So.2d 646 (3rd Cir.App.1960) and McFarland v. Illinois Central Railroad Company, La.App., 122 So.2d 845 (1st Cir. App.1960). In the recent case of Glisson v. Missouri Pacific Railroad Company, La. App., 158 So.2d 875 (3rd Cir.App.1963) this court summarized the dangerous trap doctrine as follows:
"Succinctly stated, these cases, and the authorities cited therein, hold that if a crossing is unusually dangerous because the view of the motorist is so obstructed as to require that he place himself in a position of peril dangerously near the tracks, before he has a view of the oncoming train, the railroad company will be held liable, unless. *22 it can show that it took unusual precautions, such as reducing the speed of the train, or increasing its warnings or providing signaling devices, etc. The theory of this doctrine is that the railroad may not rely upon the duty of the motorist to stop and look, if the physical circumstances are such that stopping and looking will do the motorist no good."
In the Glisson case, which involved a rural crossing, we held the dangerous trap doctrine did not apply where the motorist, from a position at the stop sign 48 feet from the railroad track, had an unobstructed view of the tracks for a distance of 380 feet and a partially obstructed view for a distance of at least 600 feet.
In the present case there were no buildings, weeds, bushes or permanent obstructions to the motorist's view within the 100 feet of right of way, north of the main line track, extending west a distance of 1,050 feet. However, the plaintiffs argue that a large grain truck, approximately 40 feet in length, 7½ feet in height and 8 feet in width was parked on the south side of the gravel driveway, near the railroad stop sign, on property leased by the railroad to a lumber company, which in turn allowed Mr. Deo Guidry to park his truck there; that this truck was customarily parked in this location to the knowledge of the railroad company employees; that it so obstructed the view of the driver of the truck, that he was required to place himself in a position of peril dangerously near the tracks before he could see the oncoming train.
Much of the record is concerned with the location of this grain truck and the extent to which it obstructed Mr. Rider's view of the train. We do not deem it necessary to discuss all of this evidence. The testimony as a whole and pictures taken immediately after the accident show beyond question that this grain truck was parked along the south side of the gravel driveway just north of the railroad stop sign. The stop sign was a measured distance of 54.7 feet from the main line track and even though the grain truck was parked at a slight angle to the south it was still at least 50 feet from the main line track. This means that when the dump truck got within 50 feet of the main line track the driver thereof had a clear and unobstructed view of the train for an almost unlimited distance to the west. It is our conclusion that there was no obstruction to view which rendered this an unusually hazardous crossing. No other circumstance is shown which might cause this case to fall within the dangerous trap doctrine as set forth in the above cited cases.
Having concluded that this crossing was not a dangerous trap, it is readily apparent that Mr. Rider was guilty of contributory negligence. The evidence shows that he was driving the truck at a speed of about 10 MPH, that he did not stop for the stop sign, but instead, slowed down to a speed of about 5 MPH in order to negotiate the bumpy crossing. He never did stop. Instead, he proceeded directly onto the track in the path of the approaching train. In Glisson v. Missouri Pacific Railroad Company, supra, we stated the following as regards the duty of a motorist approaching a railroad crossing:
"The general rule of law is that a motorist approaching a railroad crossing must use his senses of sight and hearing for possible oncoming trains, before traversing the crossing. Tucker v. Illinois Central Railroad Company, 141 La. 1096, 76 So. 212; Rachal v. Texas & Pacific Railway Company, La. App., 61 So.2d 525; Matthews v. New Orleans Terminal Company, La.App., 45 So.2d 547. A motorist negotiating a railroad crossing is burdened with the responsibility of seeing and hearing that which he could have seen and heard, and he is presumed in law to have seen and heard what he could have seen and heard. Jackson v. Cook, 189 La. 860, 181 So. 195. If the motorist's *23 view of the right of way is obstructed, he must exercise a higher degree of caution. See Renz v. Texas & Pacific Railway Company [La.App.], 138 So.2d 114, and the authorities cited therein.
"As regards the statutory requirement that a motorist must bring his vehicle to a complete stop at a railroad crossing (LSA-R.S. 23:243) this court has held in Simon v. Texas & New Orleans Railroad Company, supra, as follows:
"`A motorist need not come to a complete stop before crossing a railroad provided the motorist has his automobile under such control as to be able to stop immediately and has exercised due care in looking and listening for an approaching train. See Robertson v. Missouri Pacific Railroad Co., La.App.1936, 165 So. 527.'"
It is obvious that Mr. Rider could have seen the train from any point within 50 feet of the track. He should have perceived the approaching train and, at the slow speed he was traveling, he could have easily stopped in time to avoid the collision. His negligence was a cause of the accident and bars recovery by his survivors.
However, the negligence of the driver is not imputed to the passengers in the truck (White v. State Farm Mutual Ins. Co., 222 La. 994, 64 So.2d 245, 42 A.L.R.2d 338), nor do we think they were guilty of any independent negligence barring recovery. Mott, who was standing in the back of the truck, gave conflicting testimony as to where the train was when he first saw it, but he did say he thought Rider was going to stop. Mott jumped out at the last instant. The other survivor, Sanders, who was in the cab, testified that he was looking off to the left and the first he knew of the train's approach was when Bertrand, seated in the center, yelled "Look out, here comes the train." Sanders testified Rider must have either "froze" or "tried to gun it and it wouldn't take the gas." The passengers had a right to rely on Mr. Rider's driving and were not, under the circumstances, obligated to warn Rider to look or listen for the train any sooner than they did. Rider was driving at such a slow speed they could reasonably assume he would see the train and would stop. By the time they could be required to realize that Rider apparently did not see the train, it was too late to warn him. Actually, Sanders thought Rider could have averted the accident after Bertrand's warning, but Rider either "froze" or stalled the motor. See Rodriques v. State Farm Mutual Automobile Ins. Co., La.App., 88 So.2d 432 and the cases cited therein for a full discussion of the law as to the duty of passengers to warn the driver.
Having concluded that the passengers in the truck were not guilty of contributory negligence, their survivors may recover if the defendant railroad company was guilty of any negligence constituting a cause in fact of the accident. (See Dixie Drive-it Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 for a recent statement by our Supreme Court of the law of legal cause).
Plaintiffs contend the railroad company was guilty of negligence in the following respect: (1) In operating its train at a speed of 40 MPH through the middle of this incorporated town of about 2,000 population, over a crossing where defendant's own traffic count showed 500 to 600 vehicles and 8 trains passed daily, with no warning to motorist except the standard railroad stop sign. (2) In failing to provide automatic signal lights, crossing gates or some other more effective type of warning device at such a crossing. (3) In failing to properly install the "Louisiana Law Stop" sign at least 50 feet from the first track (the gin spur track) and 10 feet high above the ground, in compliance with LSA-R.S. 45:562. (4) In failing to blow the whistle or ring the bell for a distance of at least *24 300 yards in advance of the crossing, in compliance with LSA-R.S. 45:561.
We find it unnecessary to discuss all four of these allegations of negligence on the part of the defendant, because we have concluded there was sufficient evidence on which the jury could have decided the whistle was not blown nor the bell rung for the required distance of 300 yards. Plaintiffs witnesses in this regard were the surviving passengers in the truck. Mr. Sanders testified he heard no whistle at all. The first he knew of the train's approach was when Mr. Bertrand yelled "Look out, here comes the train." Mr. Mott, who was standing in the back of the dump truck, gave several different estimates as to how far away the train was when he first heard the whistle, but his longest estimate was that the train was at the depot (181 feet up the track).
The engineer and the fireman on the train testified that the whistle was blown continuously for all the crossings in Basile, three of which preceded Fusilier Street; that in particular it was blown for the Fusilier Street crossing for a distance of at least 1800 feet. Mr. Louis Langley, who was in Guidry's Feed Store near the crossing, testified he heard the whistle blowing before the crash and it sounded to him as if the train was between the depot (181 feet west of the crossing) and Lewis Street (400 feet west of the crossing) when he first heard it. Mr. Clifford Sonnier, who was also in the feed store, testified he heard the whistle blowing before the impact but he couldn't estimate where the engine was when he first heard it blow. Mr. J. B. Naquin testified he heard the whistle blowing for a few seconds before the impact, but he didn't know where the train was at the time. Mr. Deo Guidry, owner of Guidry's Feed Store, testified he heard the whistle blow before the impact but he also could not estimate where it was when he first heard it. Defendant relies strongly on the testimony of Mr. Herman J. Savant, who was walking along Lewis Street near the crossing there. He testified he heard the whistle blowing before the train reached Lewis Street and that it blew continuously until it reached Fusilier Street, but he could not testify the whistle was blown for the full 900 feet required.
As is pointed out by the author of the comment "Railroad Crossing Accidents in Louisiana", 15 La.Law Review 171 at page 175 "The most difficult problem arising under this statute (LSA-R.S. 45:561) is one of proof. The victim and his witnesses almost invariably deny having heard the signal and the trainmen `swear to the statute'. Moreover, persons living in the vicinity of railroad crossings are so accustomed to the sounds of train signals that they may fail to notice them. Their testimony is therefore regarded as having little value in establishing that a warning signal was not given but is accorded greater weight when used to establish that the signal was given."
While we think the evidence here shows clearly that the whistle was blown before the impact, the testimony of the various witnesses is in considerable conflict as to whether it was blown continuously for the full required distance of 300 yards in advance of the crossing. We realize full well the very difficult task which defendant has of proving by witnesses, other than the train crew, that the whistle was blown for a distance of 300 yards. Nevertheless, the statute imposes this burden upon the defendant. In view of the conflicting testimony noted above, the jury could have found there was insufficient evidence to show the whistle was blown for the required 300 yards.
As stated in Renz v. Texas & Pacific Railway Co., La.App., 138 So.2d 114:
"It has been repeatedly held that the Court will not set aside a verdict of the Jury in a case where the testimony is conflicting and where the testimony of the witnesses is sufficient to sustain *25 such a verdict if accepted as credible. See Roux v. Attardo, La.App.1957 [La. App.], 93 So.2d 332; Cush v. Griffin, La.App.1957, 95 So.2d 860; Mire v. St. Paul Mercury Indemnity Company, La.App.1958, 103 So.2d 553; Hardie v. Allen, La.App.1951, 50 So.2d 74."
The jurisprudence is apparently established in this state that the statutory distance of 300 yards is a minimum safety standard and either the whistle must be blown or the bell rung continuously for at least this distance. Violation of this safety law is "negligence per se." Smith v. Texas & Pacific Railway Co., La.App., 189 So. 316; Winfiele v. Texas & Pacific Railway Co., La.App., 150 So. 43; Guillot v. Texas & Pacific Railway Company, 8 La. App. 143.
Summarizing, it is our conclusion that in the two cases brought by survivors of the passengers in the truck, i. e., Suit No. 1020 entitled "Mrs. Emma Fontenot Bertrand, et al. v. Missouri Pacific Railroad Company", and "Cursey J. Vidrine, et al. v. Missouri Pacific Railroad Company", 160 So.2d 25 the judgments appealed must be affirmed. However, in "Mrs. Anita Ledoux Rider, et al. v. Missouri Pacific Railroad Company", 160 So.2d 26 brought by survivors of the driver of the truck, the judgment of the district court must be reversed and set aside and judgment therein rendered in favor of the defendant railroad company.
For the reasons assigned, the judgment appealed from in this case is affirmed. All costs of this appeal are assessed against the defendant, Missouri Pacific Railroad Company.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.
FRUGE, J., recused.